Thomas P. Farley J.
May a stipulation of discontinuance of a tax certiorari proceeding commenced by the owner of real property be vacated at the instance of a receiver appointed in a subsequently initiated mortgage foreclosure action? The question poses a problem that apparently was never directly considered by the courts of the State of New York and arises from an application by a receiver made in the tax certiorari proceeding to set aside an order approving a stipulation withdrawing with prejudice the fee owner’s petition to review the 1974/75 assessment levied by the Nassau County Board of Assessors. A companion motion requests similar relief respecting a stipulation of settlement and a discontinuance of petitions to review tax assessments levied by the Incorporated Village of Massapequa Park.
Longwood Associates, as owner of the Bar Harbor Shopping Center located in Massapequa Park, New York, instituted proceedings to review the assessments levied against its property by the Nassau County Board of Assessors for the 1972/73, 1973/74, and 1974/75 tax years. Similar proceedings were brought against the assessors for the Incorporated Village of Massapequa Park for the 1974/75 and 1975/76 tax years. During the pendency of these proceedings, Longwood de *37 faulted on its mortgage, and the Federal Deposit Insurance Corporation, as assignee of the now defunct Franklin National Bank, instituted a mortgage foreclosure proceeding in which the movant, Morton Haves, was appointed receiver by order dated April 17, 1975.
Following the receiver’s appointment, and some time in June and July of 1975, the attorneys for Longwood and the receiver met on two occasions to discuss mutual financial problems. The pendency of the tax certiorari proceedings was specifically discussed but no agreement was reached concerning their continued prosecution or the receiver’s participation in this litigation. At that time, the parties were aware that the owner had not paid the 1975 general county tax, the 1974/75 school, nor the 1975/76 village taxes. All prior taxes had been paid.
On August 15, 1975, the owner and the County of Nassau agreed to a $250,000 reduction in the assessments levied for the 1972/73 and 1973/74 tax years and a stipulation settling the proceedings for those years and withdrawing with prejudice the proceeding for 1974/75 was executed. An order approving the stipulation of settlement was then entered. The attorneys for the owner and the Village of Massapequa Park later agreed to a similar reduction of the village assessment for the 1974/75 tax year. A stipulation settling this proceeding was executed on October 29, 1975 and an order also entered thereon. A separate stipulation, dated November 19, 1975, withdrawing with prejudice the 1975/76 proceeding was also executed by the attorneys for the parties. The companion motion by the receiver seeks to vacate both stipulations.
On these motions, which were brought after the mortgagee had advanced the money to pay the delinquent taxes, the receiver claims that he possessed a substantial, if not greater, interest than Longwood Associates in the outcome of the county and village tax proceedings that were discontinued with prejudice. He asserts that upon his appointment he became obligated to pay taxes, and if the proceedings had not been discontinued he could have negotiated a similar reduction in the tax assessments with a resulting tax saving exceeding $150,000.* He further argues that the owner, not having *38 paid taxes, had no financial incentive to pursue the litigation and that he was entitled to notice of the discontinuances pursuant to CPLR 3217, or to be joined as an indispensable party under CPLR 1001 (subd [a]) and in the interest of justice. It should be observed that on the date of the receiver’s appointment, the time in which to file tax protests and petitions to review the 1975 county tax assessment, the 1974/75 school levy and the 1974/75, as well as the 1975/76 village assessments, had expired. Consequently, the receiver was time barred from bringing any proceeding to review these assessments (Nassau County Administrative Code, §§ 6-17.2, 6-17.3; Real Property Tax Law, § 704) and these statutory limitations are strictly enforced (Matter of United Artists Eastern Theatres v Board of Assessors, 76 Misc 2d 26).
The branch of the motion to set aside the settlement and discontinuance of the 1974/75 proceeding against the village assessors cannot be granted. The owner paid the taxes for that year and is the person entitled to the refund in accordance with the judgment of the court (Real Property Tax Law, § 726; People ex rel. New York Title & Mtge. Co. v Miller, 262 App Div 175, affd 287 NY 685, rearg den 287 NY 838; People ex rel. Crompton Bldg. Corp. v Sexton, 264 App Div 522). The receiver’s appointment on April 17, 1975, just prior to the end of the village tax year (June 1, 1974 to May 31, 1975) did not serve to invest him with equitable rights to the refund of taxes he did not pay. The general rule is that, as between the owner and the mortgagee, the former is entitled to the rents and hence to any refund of taxes paid before default occurs and a receiver appointed (People ex rel. Balbrook Realty Corp. v Mills, 295 NY 190). The village taxes here were paid prior to the receiver’s appointment and a default under the mortgage which the owner, who was not the original mortgagor, had not covenanted to pay. The refund, consequently, was free from the lien of the mortgage, and not reachable by the receiver who possessed no greater rights than the mortgagee (People ex rel. Balbrook Realty Corp. v Mills, supra). The branch of the motion to intervene in that proceeding is denied. The motions insofar as they seek to set aside the discontinuance of the 1974/75 county and 1975/76 village proceedings, the taxes for which years had not been paid, require a more extended discussion.
Had the taxes been paid at the time of the discontinuance of the certiorari proceedings, either the receiver or the mortga *39 gee would unquestionably possess a sufficient interest in the litigation to have maintained it in the owner’s name for the benefit of anyone who might ultimately be entitled to a refund. In People ex rel. Ambroad Equities v Miller (289 NY 339) the question arose whether a grantee who received a conveyance subsequent to the levy of the tax and the institution of a certiorari proceeding could continue the litigation in the name of the former owner. The argument advanced against his doing so was that the petitioner no longer had any interest in the refund and the person having such interest by reason of having paid the tax was not a party to the proceeding. In rejecting this position, the Court of Appeals stated (p 342): "In certiorari proceedings only the question whether the tax assessment is valid can be litigated. If the assessment is vacated or reduced after the tax has been paid, refund must be made to the person entitled thereto. Even where the final order in a certiorari proceeding directs that the refund should be paid to one of the parties to the proceedings, other parties to that proceeding may thereafter show a superior equitable right to a refund. (People ex rel. 1220 Madison Ave. Corp. v. Miller, 287 NY 685.) * * * If there is dispute whether the appellant or some other person is entitled to it, that dispute must be decided in appropriate proceedings in the Supreme Court, to which all interested persons are parties.” The same reasoning has been applied in other cases involving similar factual patterns (People ex rel. Luxemburg Realty Corp. v Miller, 289 NY 710; People ex rel. Bingham Operating Corp. v Eyrich, 265 App Div 562).
These authorities impel the court to find as a general proposition that a receiver, in a mortgage foreclosure, upon timely application, would be granted leave to intervene in a tax certiorari proceeding to continue the litigation for the benefit of any person entitled to a possible refund. There is, however, an important difference between the factual situation at hand and the cases cited. Here, the taxes had not been paid when the proceedings were discontinued, and hence, there could be no refund in which any party could claim an interest. The receiver, by his own admission, did not have the money to pay the taxes, and the mortgagee did not advance the $300,000 needed for this purpose until after the litigation was discontinued. Furthermore, the receiver made no motion to intervene prior to termination of the proceedings although he twice discussed the pending litigation with counsel for the *40 owners. Their consultations proved fruitless. The trial of the proceedings was imminent. Under these circumstances, could the receiver place reliance on the owner’s continued prosecution of litigation in which it had no financial stake? Prompt action by the receiver would appear to have been dictated. That action did not follow, but may well have been premature or pointless in the absence of payment of the tax. The mortgagee, the party to ultimately benefit or lose by the discontinuance, also stood by in this critical period. It did not seek to intervene, and only advanced the funds for the taxes at a later date. Therefore, at the time the discontinuances were executed, neither the mortgagee nor receiver could factually assert a present interest in the certiorari proceedings as no right to a refund then existed.
Despite the foregoing factors, the potential interest of the receiver in keeping this litigation alive is clearly recognizable, and the underlying question remains whether the action undertaken by the owner was proper. Could it be justified as the assertion of a legal right incidental to the owner’s retention of title? (Cf. Johnson v Smith, 297 NY 165, 172-173.) The owner so suggests. What duty, if any, was owed by the holder of title to the receiver and indirectly to the mortgagee? Certainly, the owner was subject to the mortgage and the receivership including the provisions of the order of appointment authorizing the receiver to institute or continue all actions. While the owner can point to an order of the court approving the discontinuance of the proceeding against the county, none exists as to the other proceeding involving the village, and in neither was notice given to the receiver who was at least a potentially interested third party. These numerous questions, as well as those relating to the diligence exercised by the receiver and mortgagee, raise issues of fact that cannot be summarily decided on the affidavits presented. These papers also leave untold the factors which led to termination of the conferences held between the attorneys for the owner and receiver concerning pursuit of this litigation. In the absence of a disclosure of the circumstances that gave rise to each party’s course of action, a final resolution on the bases of the affidavits submitted is not warranted.
There is still another obstacle to entertainment of the applications. As a general rule, a stipulation of discontinuance will not be summarily set aside on motion. A plenary action is required (Yonkers Fur Dressing Co. v Royal Ins. Co., 247 NY *41 435; Gardner v Board of Educ., 28 AD2d 616). While the courts on occasion have departed from this rule (see Phoenix Assur. Co. v Stark Mobile Homes, 39 AD2d 514), the situation here strongly militates against a deviation from the customary practice. No allegation is made that the parties themselves acted under an erroneous assumption of fact or law. Furthermore, the stipulation of discontinuance against the county board of assessors was part of a settlement of proceedings involving two prior tax years. The settlement terminated the litigation and gave rise to a new contract which cannot be set aside except for reasons that would invalidate the agreement (Hegeman v Conrad, 1 AD2d 788). It is also probable that the discontinuance of the 1975/76 certiorari proceeding against the village formed part of the consideration for the settlement of the proceeding for the prior tax year.
Accordingly, the branch of the receiver’s motion to vacate the discontinuance of the 1974/75 certiorari proceeding against the Board of Assessors of the Village of Massapequa Park is denied with prejudice. The applications to vacate the discontinuance of the 1974/75 proceeding against the Nassau County Board of Assessors, and the 1975/76 proceeding against the village assessors is denied without prejudice to such other action as the receiver may be advised to pursue.

 Nassau County general taxes are imposed on a calendar year basis. School and village taxes cover a fiscal year running from July 1 through June 30 and June 1 through May 31, respectively. A chart furnished by the receiver sets forth in dollar amounts a comparison of the receiver’s and owner’s liability for 1975 county and 1974/75 school and village taxes dating from his appointment on April 17, 1975.