812 Park Ave. Corporation, Appellant, *v.* Regina P. Pescara, Respondent.

First Department, December 1, 1944.

*A. Hayne de Yampert* of counsel (*Fitzhugh McGrew* with him on the brief; *White & Case,* attorneys), for appellant.

*Samuel Weinreb* for respondent.

CALLAHAN, J. This is the second appeal in this case. We heretofore affirmed an order denying a motion by plaintiff for summary judgment. (*812 Park Ave. Corporation* v. *Pescara,* 267 App. Div. 817.) After our decision on the prior appeal defendant moved for summary judgment dismissing the complaint, except as to that part of plaintiff's claim as to which defendant conceded liability. Plaintiff thereupon made a cross motion again asking for summary judgment for the full amount demanded in the complaint. Special Term denied the cross motion of plaintiff for summary judgment on the basis of our prior decision, and granted defendant's motion. It awarded plaintiff $948.95, the sum concededly due, but dismissed the balance of plaintiff's complaint. We deem that in granting this relief Special Term misunderstood the effect of our prior decision. There we decided no more than that plaintiff's first application for summary judgment was properly denied because the record then before us disclosed the existence of factual issues.

The dispute herein arises in connection with a claim by plaintiff landlord, against the defendant tenant, under a lease. The landlord claims that the tenant violated the provisions of the lease in that she suffered disturbing noises to be made in the building. The landlord gave notice of termination and brought summary proceedings based on holdover, which eventually resulted in a final order dispossessing the tenant. The lease was to expire September 30, 1942, and the rent reserved thereunder was at the rate of $308.34 a month. Defendant paid rent through October, 1941. She vacated the premises after the dispossess order on January 20, 1942. She concedes liability for use and occupation from November 1, 1941, to January 20, 1942. The balance ($3,269.42) consists of a claim for damages alleged

by plaintiff to have survived dispossess because of the provisions of the lease.

The eighth clause of the lease provided that the tenant was to observe the rules and regulations set forth on the back of the lease, and such other rules as the landlord's agents might adopt. One of these rules provided that no tenant should make or permit any disturbing noises in the building, and should not play or suffer to be played any musical instrument between 11:00 P. M. and the following 8:00 A. M., if the same should disturb other occupants.

The fifteenth clause of the lease provided that " (1) If Tenant shall make default in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent, or if the demised premises become vacant or deserted, Landlord may give Tenant three days' notice of intention to end the term of this lease and thereupon, at the expiration of said three days (if said default continues to exist) the term under this lease shall expire as fully and completely as if that day were the day herein definitely fixed for the expiration of the term, and Tenant will then quit and surrender the demised premises to Landlord but Tenant shall remain liable as hereinafter provided; * * *."

The lease then provided that if the landlord deemed objectionable or improper any conduct of the tenant, it might give notice of intention to end the term, and thereupon the term expired, the tenant then agreeing to surrender the premises. If the notice above provided for should have been given, the lease said that the landlord might then re-enter and dispossess the tenant. It further provided that in the case of any such default or re-entry or dispossess the rent was to become due and payable up to the time of such re-entry, together with such legal expenses as the landlord might incur, and that the landlord might relet the premises; and the tenant agreed that she should also pay the landlord as liquidated damages for failure of the tenant to perform said tenant's covenants, " any deficiency between the rent hereby reserved, and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. * * * Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Landlord to collect the deficiency for any subsequent month by a similar proceeding."

It appears that a few months after the tenant took possession other tenants in the building complained of noise in her apartment in connection with composing and practicing on the piano at prohibited hours. A dispossess proceeding was commenced based upon notice of termination due to tenant's violation of the rules. This dispossess proceeding was settled by the tenant's signing a supplemental agreement wherein she covenanted that she would permanently discontinue the noise complained of, and would prevent all composing or practicing on the piano except for certain specified daylight hours on each day. Later other tenants again complained of noises during prohibited hours, and the plaintiff brought a second proceeding resulting in the final order of dispossess above referred to.

In denying the first motion for summary judgment made by plaintiff, Special Term indicated that it found that the covenants for liability surviving dispossess came within the condemnation of such cases as *884 West End Avenue Corporation* v. *Pearlman* (201 App. Div. 12, affd. 234 N. Y. 589) and *Seidlitz* v. *Auerbach* (230 N. Y. 167) in that they created a penalty and were unenforcible because they were unconscionable. Special Term further held that the only clause providing for survival of the tenant's liability required the tenant to pay damage only in the event of a reletting, and that as there had been no reletting here the tenant was not liable for damages.

In affirming the earlier order we did so without approving Special Term's views of the law affecting the construction of the survival clause, but solely because we found issues of fact which required trial.

Upon the record now before us we find that these issues of fact have been eliminated. We are, therefore, required to determine whether or not the survival clause of the lease was enforcible — a question which we were not required to and did not decide on the earlier appeal. The present record shows that after the termination of the dispossess proceedings, the landlord diligently endeavored to relet the premises, but was unable to do so. Defendant does not now dispute these contentions. The earlier record had no statements concerning any efforts to relet. Part of the sum claimed by plaintiff is represented by attorney's fees in the amount of $700, which plaintiff says it incurred in the dispossess proceedings and in negotiations endeavoring to bring about the termination of the tenant's noise-making. The present record does not appear to dispute the payment of this sum, or the reasonableness of the amount expended. The record in the earlier appeal showed that defendant did question the reasonableness of this charge.

Returning to the legal question presented, we find that we must construe the various clauses relating to the survival of liability so as to obligate the tenant to pay the damages which plaintiff now seeks. It is to be noted that upon default by the tenant, the landlord was authorized to relet, and the tenant was to pay the landlord, as liquidated damages for the failure to observe the covenants contained in the lease, any deficiency between the rent reserved and the net amount collected from the leased premises. To this was to be added attorney's fees and legal expenses. Such damages were to be paid in monthly installments. We find that such provisions are not unconscionable, and do not provide for a penalty.

In *Seidlitz* v. *Auerbach* (*supra*) the court held that a deposit in the sum of $7,500 was security and not liquidated damages, and that any liquidated damages might be deducted from the security and the balance was required to be returned. This ruling was based on the provisions of the lease then before the court, which not only provided that the tenant was to be liable for any deficiency which might result from reletting the premises, but also contained a clause regarding the deposit of $7,500 held as security. The court said that the landlord was not entitled both to retain the $7,500 and to enforce the liability for damages.

Plaintiff herein is not seeking to recover anything more than actual damages represented by the deficiency and its expenses.

In *884 West End Avenue Corporation* v. *Pearlman* (*supra*) the lease was for a five-year term at an annual rental of $4,500. It was made on October 1, 1920. The tenant vacated the premises on December 30, 1920. The lease contained an acceleration clause, and the landlord brought suit for $21,750 — the entire accumulated rental to the end of the five-year term — under a clause in the lease which said that in the event of the landlord resuming possession, " an amount equal to the whole of the rent herein reserved for the balance of the term * * * shall thereupon become immediately due and payable * * *." This court, in its opinion, pointed out (201 App. Div. 12) that if the tenant vacated he was obligated to pay a lump sum in the amount of all rent for the balance of the term, even if he were willing to continue to pay his monthly installments. Furthermore, if the landlord relet the premises he was required to pay back to the tenant only the rent received from month to month, thus making the tenant lose interest on the balance of the sum deposited. Accordingly, this court held that the provision contained in the lease in that case constituted a penalty and was unconscionable and unenforcible.

It is to be noted that in both of the cited cases the sums provided as liquidated damages would have been greater than and entirely disproportionate to any actual damage suffered by the landlord.

In the present case the amount to be paid, though termed liquidated damages, is measured by the actual damage sustained. Payment is not accelerated, the damages being payable from month to month. The present case is, therefore, controlled by such authorities as *Lenco, Inc.,* v. *Hirschfeld* (247 N. Y. 44) and *International Publications* v. *Matchabelli* (260 N. Y. 451). While in the cases last cited the breach on the part of the tenant was for nonpayment of rent, in each case the survival clause was substantially the same as that found in the present lease, and in both cases such clauses were held enforcible.

That in the present case the termination of the lease was due to a breach of a covenant concerning the maintenance of order in the premises, rather than of the covenant for payment of rent, would not alter the right to enforce the liability surviving a breach. The validity of such a clause was sustained as early as *Hall* v. *Gould* (13 N. Y. 127) where the covenant was that the tenant would not suffer the premises to be used for any disreputable business, and upon re-entry by the landlord the tenant agreed to remain answerable for the loss of rent. The court there said (pp. 133–134): " * * * it was manifestly the intention of the parties that in case of a breach by the lessee, or any one in under him, of the covenant ' that he would not himself, nor would he allow any one else to make use of the premises for any kind of disreputable business, including the keeping of a retail grocery of liquors,' and a re-entry by the lessor for such breach, the lessee should remain answerable for any loss of rent to the lessor. This is necessarily involved in the provision, that in case of re-entry the lessor was to relet the premises for the benefit of the lessee. This being the agreement of the parties by an instrument under their seals, providing for the exact case which has happened, I do not see upon what ground a court can refuse to hold them to its terms. It certainly is not an illegal agreement, nor is there anything unreasonable in a lessee agreeing to completely indemnify his lessor for any injury which may arise to him by the lessee's breach of his own agreement."

Nor would the fact that the landlord in the present case was unable to relet during the balance of the original term relieve the tenant of liability. Prima facie the amount of the damage was the rent reserved. It was to be reduced by any sum col-

lected on reletting. This was called a deficiency. That the landlord was unable to relet after diligent effort merely meant that there was no mitigation of damages for which the tenant was entitled to credit.

For the reasons indicated, the judgment and the orders so far as appealed from, should be reversed, with costs, defendant's motion for summary judgment denied, and plaintiff's cross motion for summary judgment granted. Judgment is directed to be entered for the plaintiff for $3,269.42, with interest from January 20, 1942, and costs.

MARTIN, P. J., TOWNLEY, GLENNON and COHN, JJ., concur.

Judgment and orders so far as appealed from, unanimously reversed, with costs, defendant's motion for summary judgment denied, and plaintiff's cross motion for summary judgment granted. Judgment is directed to be entered for the plaintiff for $3,269.42, with interest from January 20, 1942, and costs. Settle order on notice.