**In re SHOPPERS PARADISE, INC., Debtor.**

**Bankruptcy No. 80 B 20175.**
**Adv. Nos. 80–2081, 80–2091.**

United States Bankruptcy Code, S. D. New York.

Dec. 30, 1980.

Ballon, Stoll & Itzler, New York City, for Shoppers Paradise, Inc.; Burton D. Strumpf, New York City, of counsel.

Rogers, Ferraro & Cody, P. C., Pomona, N. Y., for Peabody Equities Corp.

Shea & Gould, New York City, for Masters, Inc.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

At issue in this adversary proceeding, brought by Shoppers Paradise, Inc., the debtor-in-possession in this Chapter 11 case, is its postpetition claim for rent under a shopping center net lease with Masters, Inc. as tenant. Masters contends, among other things, that the lease was terminated as a matter of law and that, in any event, the debtor-in-possession has no standing to collect rent under a prepetition lease which it has neither assumed nor rejected. Masters also alleges that it may set off its claim for $200,000 under the promissory note executed by the erstwhile debtor. Masters' counterclaims predicated on the prepetition debtor's execution of the promissory note and lease were severed from this proceeding for trial purposes.

Peabody Equities Corporation, as assignee of the leasehold mortgagee, Massachusetts Mutual Life Insurance Company, has intervened as an additional defendant for the purpose of protecting its assignment of rents which became effective upon default by the debtor as mortgagor under the leasehold mortgage. Peabody urges that the debtor-in-possession is entitled to rent from Masters without having to assume the contract of lease, with court approval, and that Peabody's right to the rent is superior to Masters, who is not entitled to assert any set off.

The right to receive the disputed rent is crucial to the existence of the debtor-in-possession who has defaulted under the leasehold mortgage assigned to Peabody and more importantly, has defaulted in paying its obligations under the ground lease, with the result that this court has permitted the ground lessor to proceed in state court in its efforts to regain possession of the premises in question. If the debtor-in-possession is unable to cure the default under the ground lease, its termination would thereby conclude as a matter of law the sublease between the debtor-in-possession and Masters, thus mooting this adversary proceeding. That Masters is keenly aware of this point was manifest when one of its attorneys,

Philip Mann, blurted on the record that Masters would "keep these people from the money" and would appeal "so that these people will never see one red cent because the Shoppers' ground lease with Appleman will fall during the appeal period ...".

## FINDINGS OF FACT

1. On May 5, 1980, Shoppers Paradise, Inc. filed with this court its petition for relief under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1101 et seq., and has continued in possession of its property as debtor-in-possession.

2. Pursuant to a lease modification agreement dated April 9, 1965, Shoppers and the owners of several parcels of land aggregating approximately nine acres in Spring Valley, New York entered into a 99 year ground lease. Shoppers then constructed a 132,000 square foot building on the nine acres of land.

3. On June 12, 1970, David T. Stutman, the president and principal of Shoppers, died. The executors under the will replaced him as the operating officers of Shoppers.

4. On April 27, 1973, Masters, as tenant and Shoppers, as landlord, entered into an Indenture of Lease under the terms of which Shoppers leased to Masters the 9 acres of land held by Shoppers under the ground lease and the building constructed by Shoppers.

5. On the same date, April 27, 1973, Masters loaned Shoppers $200,000 pursuant to a written promissory note and loan agreement which provided for payment at the rate of 7% per annum. Additionally, Shoppers and Masters entered into two more agreements, an Abatement and Security Agreement and a Consent executed by the Stutman Estate. The loan agreement and the Abatement agreement are involved under Master's counterclaims which were severed from this adversary proceeding for trial purposes.

6. Section 5.1 of the Indenture of Lease between Masters and Shoppers, provides in part as follows:

"Tenant shall and covenants and agrees to pay to Landlord ... for and throughout each lease year of the Original Term of this Lease without demand and without deduction of any nature whatsoever except as in this Lease otherwise provided, a net annual minimum rental ...".

7. Section 5.5 of the Indenture of Lease provides in part as follows:

"Tenant covenants to pay Landlord the Basic Rent herein reserved, ... at the time of payment without any deduction, diminution, abatement or rebate of whatsoever kind, nature, and description, except in this Lease otherwise provided."

8. Section 9.1.3 of the Indenture of Lease states:

"Tenant shall duly and punctually pay, perform, observe and comply with ... each and every obligation of Landlord as tenant under the Ground Lease except as may otherwise be provided in an agreement of assumption of this Lease, dated the date hereof, among Tenant, the Head Lessor, and Landlord.

9. Masters also entered into an assumption agreement with the owners of the ground lease pursuant to which Masters agreed to pay, perform, observe and comply with all of the obligations of Shoppers as tenant under the ground lease.

10. On June 5, 1974, Shoppers entered into a bond and leasehold mortgage with Massachusetts Mutual Life Insurance Company in the face amount of $1,300,000. In connection with this mortgage Shoppers assigned to Massachusetts Mutual Life Insurance Company all of the rents from the mortgaged property, which included the premises leased to Masters, as collateral security for the payment of Shoppers' indebtedness under the leasehold mortgage.

11. On October 23, 1975, Massachusetts Mutual delivered to Masters written notice of Shoppers' assignment of lease rentals as additional security for the payment of Shoppers' mortgage obligations to Massachusetts Mutual. This note was stated to be in accordance with Section 291–f of the Real Property Law of New York, which provides in part that "... any such cancellation, abridgement, modification or prepayment made by such tenant or subtenant, after such written notice, without the consent of the holder of such mortgage, shall be voidable as against the holder, at his option ...".

12. On or about December 1, 1977, Masters discontinued paying rent to Shoppers, claiming that Shoppers' breached the $200,000 loan agreement by renting certain premises in the shopping center to a third party, constituting an event which accelerated the payments due to Masters from Shoppers under the terms of the loan agreement. Masters demanded the entire unpaid principal balance of the promissory note, together with all accrued interest.

13. Shoppers gave written notice to Masters on February 29, 1978 as to its default in the payment of rent for the months of December through February. Shoppers received no further rent payments from Masters.

14. On or about March 13, 1978, Shoppers commenced a summary proceeding in the County Court, Rockland County, by serving a notice of petition and a petition against Masters, seeking its removal from the premises and accrued rent. [Ex. A] This petition was never withdrawn and the pending summary proceeding continues as an action controlled by the automatic stay under Code § 362.

15. Masters did not then elect to surrender the premises in obedience to the summary proceeding. It remained in possession and vigorously opposed Shoppers' litigation. Additionally Masters obtained a court order dated November 16, 1978, restraining Shoppers from taking any action to cancel or terminate the lease. The court order also directed Masters to pay rent under the lease, to be held in escrow by its attorneys, Shea & Gould. As of May 5, 1980, the date when Shoppers filed its Chapter 11 petition, there was $164,333.43 in the escrow account. Masters remained in possession for another two years until it closed its Spring Valley store "in January, 1980, as a continuation of its policy of closing unprofitable stores."

[Ex. 5] Masters never notified Shoppers that it intended to remove from the premises and never delivered the keys to the building to Shoppers. Indeed, in response to a question regarding continuance of public liability insurance, Masters advised Shoppers in a letter dated July 28, 1980 that "... we do have public liability coverage on the above premises and therefore, *we have not caused a breach in our lease.*" [Emphasis added] [Ex. 4].

16. On October 1, 1978, Shoppers defaulted on its leasehold mortgage payments to Massachusetts Mutual, who then commenced a foreclosure action in the New York Supreme Court, Rockland County, where the court appointed Joseph Balsamo, Esq. receiver to collect rents for the benefit of Massachusetts Mutual.

17. Beset by litigation Shoppers was notified by the ground lessors that its lease would be terminated, effective September, 1980, for nonpayment of rent. Shoppers was then obliged to defend an action brought by Herbert Appleman and others as owners of the ground lease, in the New York Supreme Court, Rockland County. The Appleman action is a summary proceeding to recover the real property in question. This action was automatically stayed when Shoppers filed its Chapter 11 petition. However, after notice and a hearing, this court granted the owners relief from the automatic stay under Code § 362 and permitted the action to continue because Shoppers lacked equity in the property and an effective reorganization was not on the horizon. Not having the benefit of rent payments from Masters, Shoppers could not offer adequate protection to the owners, within the meaning of Code § 361, to justify a continuation of the stay. Shoppers believes that if it is entitled to postpetition rent it will be in a position to negotiate with the owners and the assignee of the leasehold mortgage.

18. On September 19, 1980, four months after Shoppers filed its Chapter 11 petition, Massachusetts Mutual cut its losses and got out of the picture by selling and assigning its interest under the leasehold mortgage to Peabody Equities Corporation, who now asserts its right as assignee of the leasehold mortgagee.

## DISCUSSION

Although all of the parties devoted much time and attention to the issue of whether or not Shoppers, as the debtor-in-possession, may seek to collect rents allegedly due under a lease which it neither assumed nor rejected, either with or without court approval, the first point to be considered is whether or not the lease existed at the time of the Chapter 11 petition. Masters, as tenant under the shopping center lease dated April 27, 1973, argues that the lease was terminated as a matter of law.

## WAS THE LEASE TERMINATED?

One of the grounds for termination asserted by Masters is that the lease was ended by the termination of the debtor-in-possession's prime lease with the Appleman group, the ground lessors. It is certainly correct that under New York law a sublease which is subject and subordinate to a prime lease is automatically terminated if the prime lease itself is validly terminated. *Bove v. Coppola*, 45 Misc. 636, 91 N.Y.S. 8 (Sup.Ct., App.Term, 1904); *Schulte, Inc. v. Cross*, 146 Misc. 763, 262 N.Y.S. 798 (Sup.Ct. App.Term 1st Dep't 1933). However, Masters is jumping the gun because the ground lease is presently the subject of a state court action initiated by the Appleman group, as ground lessors. Peabody, as assignee of the leasehold mortgage is also a party defendant in that action and is in a position to bail out the debtor-in-possession if it wishes to preserve its own investment in the leasehold. Thus, the issue is still up in the air and the curtain has not yet come down on either Shoppers, the debtor-in-possession, or on Peabody, the leasehold assignee. Although the trial in that case is imminent, it is yet too soon to regard the prime or ground lease as terminated. Hence, the ground lessor's action has not yet undermined the vitality of Master's sublease.

Masters urges another, and more significant basis, for maintaining that its lease

with Shoppers was terminated as a matter of law. Masters has asserted that the lease was terminated by its surrender of the premises on or about February 1, 1980. Such surrender and Shoppers' acceptance thereof is predicated on the fact that Shoppers instituted a summary proceeding brought to dispossess Masters in March, 1978 and that Masters subsequently vacated the premises in January, 1980, two years later. It should be noted that no Notice of Eviction was ever served. At the trial this Court indicated that under Section 749, Subdivision 3 of the New York Real Property Law, the service of Notice of Eviction constitutes a cancellation of the lease and terminates the relationship of landlord and tenant. However, Masters relies upon its vacating the premises subsequent to the service of the Notice of Petition, as distinguished from a notice of eviction.

In support of its argument that the lease was effectively surrendered when it vacated the premises, Masters cites *Cornwell v. Sanford*, 222 N.Y. 248, 118 N.E. 620 (1918). There, the plaintiff, as landlord, and the defendant, as tenant, had entered into a lease for premises for a term ending in May, 1907. In June, 1906, the plaintiff commenced summary proceedings for the removal of the defendant and his subtenants from the premises for nonpayment of rent. In July, 1906, the defendant removed from the premises. No warrant of eviction was ever issued and no further action in the summary proceedings was had. The plaintiff thereafter brought an action for payment of rent through the end of the lease term. The Court of Appeals held that the plaintiff was not entitled to recover the rent, stating: (pp. 252–253, 118 N.E. 620)

"Judicial decisions have uniformly held that the moving by the tenant from the lease premises, enabling thereby the landlord to take peaceable possession of them, after the issuance and service of the precept in the summary proceedings, cancels the lease and annuls the relation of landlord and tenant as of the time of the removal; the service of the precept is an election and declaration on the part of the landlord that the tenant should re-

move from the premises and the lease should be cancelled; it creates to the tenant the right to remove from the premises and effect the cancellation of the lease at any time thereafter; the removal is the precise act and effect the landlord sought through the service of the precept and the proceeding, and it is entirely immaterial, within the law, whether it is produced through the warrant or the conduct of the tenant in obedience to the precept."

Similarly, in *Jacob Hoffman Brewing Co. v. Wuttge*, 234 N.Y. 469, 138 N.E. 411 (1923), the Court of Appeals explained its earlier position as follows: (pp. 473–474)

"The Appellate Division has also adopted this view for it is said in its opinion that the defendant Wuttge having granted to the the brewing company an interest in the leasehold by way [of a] mortgage, had no right or power to destroy the interest by surrendering the lease to the landlord. This is contrary to our decision in *Cornwell v. Sanford*, 222 N.Y. 248 [118 N.E. 620], where we held that the moving of the tenant from the leased premises thereby enabling the landlord to take peaceable possession of them after the issuance and service of a precept in summary proceedings, cancels the lease and annuls the relation of landlord and tenant as of the time of removal. The removal, we said, was the precise act and effect the landlord sought through the service of the precept and that it was entirely immaterial whether it was produced through the warrant or the conduct of the tenant in obedience to the precept. Surely the mortgage given by the tenant to this plaintiff could not reduce the lessor's rights under the lease or prevent him from pursuing any and all of these remedies for the non-performance of the covenants."

■ Contrary to the position asserted by Masters in line with the holdings in *Cornwell* and in *Jacob Hoffman Brewing Co.*, Masters did not vacate the premises "in obedience to the precept." This court has found as a matter of fact that Masters

vigorously opposed eviction proceedings; remained in possession for two years thereafter and then vacated the premises in continuation of its policy of closing unprofitable stores. Masters did not notify Shoppers that it vacated or surrendered the premises and never returned the keys. Its conduct was sufficient to justify a finding that it continued thereafter to regard the lease as effective and that its subsequent unnoticed removal from the premises was not in response to, or in obedience to the summary proceeding. Indeed, the court in the summary proceeding directed Masters to continue to pay rent, but to deliver it in escrow to its attorneys until its counterclaims, based on the promissory note, could be resolved. Thus, Masters cites good law, but not factually congruent with Masters' actions in this case.

■ Moreover, the lease in question contains a survival clause in Section 23.4 which provides in part as follows:

"No expiration or termination of this Lease pursuant to Section 23.1, and no termination by or resulting from summary proceedings or otherwise, shall relieve tenant of its liability and obligations under this Lease, and any such liability and obligations shall survive any such expiration or termination. In the event of any such expiration or termination, whether or not the Property or any part thereof shall have been relet Tenant shall pay to Landlord the Basic Rent and other sums and charges to be paid by Tenant up to the time of such expiration or termination of this Lease, and thereafter Tenant, until the end of what would have been the term of this Lease in the absence of such expiration or termination, shall be liable to Landlord for, and shall pay to Landlord, as and for liquidated and agreed current damages for Tenant's default, the equivalent of the amount of the Basic Rent and such other sums and charges which would be payable under this Lease by Tenant if this Lease were still in effect, less the net proceeds, if any, of any reletting effected pursuant to the provisions of Section 23.3 . . .".

Thus, Masters expressly agreed that "no termination . . . resulting from summary proceedings . . . shall relieve Tenant (Masters) of its liability and obligations under this Lease . . .". Certainly the parties may agree between themselves that should the relationship of landlord and tenant terminate, the tenant may continue liable to the end of the term although out of possession. *Mann v. Ferdinand Munch Brewery*, 225 N.Y. 189, 194, 121 N.E. 746 (1919); *International Publications Inc. v. Matchabelli*, 260 N.Y. 451, 454, 184 N.E. 51 (1933). Survival clauses, such as the one in this lease, have been held to be valid and enforceable. *812 Park Ave. Corporation v. Pescara*, 268 A.D. 436, 51 N.Y.S.2d 538 (1944), aff'd 294 N.Y. 792, 62 N.E.2d 234 (1945).

Accordingly, it is concluded that the alleged termination of its lease is not a valid defense to Shoppers' claim for postpetition rent.

### ASSERTED SETOFF AGAINST POSTPETITION RENT

Masters reasons that any debt which it may owe to Shoppers for failure to pay rentals may be offset against the claim of Masters against Shoppers under its $200,000 promissory note payable to Masters. Code § 553(a), which governs the right of offset provides in part as follows:

"Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . .".

■ It is not disputed that in applying the principle of setoff it is not required that the debt and claim be of the same character; they may arise from different transactions, as long as there is a mutuality of obligations. 4 *Collier on Bankruptcy*, ¶ 2.1, p. 867 (14th Ed. 1978). Thus, postpetition obligations may be setoff against one another. *In re Alfar Dairy, Inc.*, 458 F.2d 1258 (5th Cir. 1972) reh. den. 1972, cert. den. 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972). Similarly, prepetition obligations

may also be offset. *United Cumberland Glass Mfg. Co. v. DeWitt*, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1914), 4 *Collier on Bankruptcy*, ¶ 68.05[2], p. 884 (14th Ed. 1978). However a postpetition obligation for rent may not be setoff against a prepetition obligation of the debtor, since there is a lack of mutuality of obligation. *Standard Oil Co. of New Jersey v. Elliot*, 80 F.2d 158 (4 Cir. 1935); 4 *Collier on Bankruptcy* ¶ 2.1, p. 872 (14th Ed. 1978). This conclusion is premised on the theory that the prepetition debtor and the debtor-in-possession are separate and distinct entities. See *Shopmens Local 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698, 704 (2 Cir. 1975).

Masters attempts to invoke the doctrine of setoff on the theory that what is involved here are mutual prepetition obligations; its claim against the debtor under the promissory note and the prepetition debtor's claim for rent under the lease. Masters arrives at this position from the basic premise that the rent claim cannot be treated as a postpetition obligation in favor of the debtor-in-possession until the debtor-in-possession assumes the lease, after notice and hearing and with the court's consent, within the requirement of Code § 365. Hence, Masters concludes that the rent claim belongs to the prepetition debtor and is subject to being offset by prepetition claims until the debtor-in-possession assumes the lease with the court's blessings. Masters's syllogistic reasoning must therefore be tested in the context of whether or not its major premise is correct, namely that the debtor-in-possession must assume the lease with Masters, and with court approval, before it is entitled to receive the specified rentals.

### MUST SHOPPERS ASSUME THE LEASE TO OBTAIN POSTPETITION RENT?

Masters argues that the net lease is an executory contract which must be assumed and that Shoppers' adversary proceeding seeking solely to recover postpetition rentals is not tantamount to an assumption of the lease. Therefore, Masters reasons, that any rentals due from Masters under the lease are due to the debtor, and not to the debtor-in-possession, against which entity Masters may setoff the monies allegedly due it from Shoppers, as prepetition debtor. Masters further notes that since it vacated the premises prior to the commencement of the Chapter 11 case, no *quantum meruit* claim exists in favor of the debtor-in-possession.

In order to follow the assumption of contract theory raised by the parties reference must be made to Code § 365(a) which authorizes the trustee, subject to the court's approval, to assume or reject an executory contract or unexpired lease and provides as follows:

"Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

Under Code § 1107(a) the debtor-in-possession generally has the rights and powers and performs all the functions of a trustee, including the right to seek assumption or rejection of executory contracts.

Under Code § 365(d)(2), a debtor-in-possession in a Chapter 11 case may assume or reject an executory contract or an unexpired lease of the debtor at any time before the confirmation of the plan, unless on request of any party to the contract or lease, the court specifies the time for assumption or rejection. Thus, Masters could at any time request an order directing the debtor-in-possession to assume or reject the lease. See *In re Greenpoint Metalic Bed Co.*, 113 F.2d 88 (2d Cir. 1940). Until assumed or rejected, an executory contract or unexpired lease remains in force and if neither assumed nor rejected, passes with other property of the debtor to the reorganized corporation. *Consolidated Gas Electric Light & Power Co. v. United Railways & Electric Co.*, 85 F.2d 799, 805 (4th Cir. 1936) cert. den. 300 U.S. 663, 57 S.Ct. 493, 81 L.Ed. 871 (1937). See *Smith v. Hill*, 317 F.2d 539 (9th Cir. 1963); *Federal's Inc. v. Edmonton Investment Company*, 404

F.Supp. 68, 71 (E.D.Mich.1975) aff'd 555 F.2d 577 (6th Cir. 1977); 8 *Collier on Bankruptcy* ¶ 3.15(6) at 204 (14th Ed. 1978).

■ Thus, although Code § 365(a) expressly requires court approval, before a debtor-in-possession may assume or reject a contract or an unexpired lease, (and it is not disputed that Shoppers never obtained court approval to assume the lease), it does not follow that Masters is relieved of its obligation to pay rent. Even where court approval was not obtained the debtor-in-possession may be deemed to have adopted the contract or lease where it received benefits and when the issue presented is whether or not such benefits should be entitled to an administration expense claim. See *In re Unishops*, 553 F.2d 305 (2 Cir. 1977); *In re W. T. Grant Co.*, 474 F.Supp. 788 (S.D.N.Y.1979) aff'd 591 F.2d 1330 (2 Cir. 1978).

■ Since an unexpired lease is not devoid of legal efficacy in a Chapter 11 case, notwithstanding the absence of a court-approved assumption of the lease by the debtor-in-possession, it follows that the parties have misdirected their focus when they argue whether or not Code § 365 authorizes the debtor-in-possession to collect rentals under an unexpired lease without first obtaining court authorization for an assumption of the lease. At the hearing this court was not impressed with Masters' contention that a court-approved assumption of the lease is a prerequisite to the right of the debtor-in-possession to collect postpetition rentals under the lease. The courts remains unimpressed, especially since none of the parties has cited what the court believes to be the controlling statutory authority, namely Code § 542(b) which provides as follows:

"Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

Although an exception is made to the extent that Masters has a valid right of setoff, as recognized under Code § 553, it was previously noted that Masters cannot setoff a prepetition claim under the debtor's promissory note against its postpetition obligation to the debtor-in-possession for rent under the lease.

■ There is no question that the rent owed by Masters is property of the estate within the meaning of Code § 541 which the debtor-in-possession is entitled to receive under Code § 542(b). The term "property of the estate" is broadly defined under Code § 541(a)(1) to include "all legal or equitable interests of the debtor in property as of the commencement of the case."

Moreover, any rentals received in escrow by Masters' attorneys, Shea & Gould, after the commencement of this Chapter 11 case must be turned over to Shoppers in accordance with the mandate of Code § 543(b)(1), which provides as follows:

"A custodian shall—(1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case."

It should be noted that the rents which must be turned over to the debtor-in-possession constitute cash collateral, within the meaning of Code § 363. Since none of the parties has addressed this point, it will suffice to observe that Peabody, the assignee of the leasehold mortgage and beneficiary of the state court receiver appointed for the collection of rents has an interest in the rents which must be turned over to the debtor-in-possession. Accordingly, unless Peabody and the debtor-in-possession otherwise agree, Peabody may invoke Code § 363(e) to condition Shoppers' use of cash collateral subject to being provided with adequate protection of Peabody's interest. Since at this time Peabody's interests and Shoppers' interest are parallel, this court will leave this issue for Peabody's further consideration, after having called it to the attention of the parties.

Although Peabody, as assignee of the leasehold mortgage, is also the prepetition assignee of Shoppers' right to collect rentals, it may not deprive the debtor-in-possession of its right to a turnover of the rentals under Code § 542(b) since the debtor-in-possession continues to have an interest in the rentals sufficient to support a determination that they are property of the estate. The assignment of rentals was concededly a security device to take effect upon the debtor's default under the leasehold mortgage. In the light of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Butner v. U. S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1978) this court must look to state law in examining the treatment to be accorded an assignment of future rents. It is settled law in New York that an assignee of future rents who has done nothing to perfect his rights will not prevail over an execution creditor or a trustee in bankruptcy. *Sullivan v. Rosson*, 223 N.Y. 217, 119 N.E. 405 (1918). The Second Circuit, in *In re Brose*, 254 F. 664, (2 Cir. 1918) held that as a result of *Sullivan v. Rosson*, supra, an assignment of rents clause in a mortgage operates as a pledge of the rents, to which the pledges does not become entitled until he asserts his rights. The court also quoted with approval the following language of the Supreme Court in *Freedman's Saving Co. v. Shepherd*, 127 U.S. 494, 502, 8 S.Ct. 1250, 1254, 32 L.Ed. 163 (1888):

> "The general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken, in his behalf, by a receiver . . . or until, in proper form he demands and is refused possession."

Later Second Circuit cases have interpreted New York Law with respect to assignment of rents clauses in mortgages in similar fashion. *In re Hines*, 88 F.2d 423 (2 Cir. 1937); *In re Humeston*, 83 F.2d 187 (2 Cir. 1936); *Prudential Insurance Co. of America v. Liberadore Holding Corp.*, 74 F.2d 50 (2 Cir. 1934); *In re Berdick*, 56 F.2d 288 (SDNY 1931).

Thus, an assignment of future rents upon a default in a mortgage requires that: "The mortgagee must take *steps* to perfect his rights" (emphasis added) and that "the provision is not self-executing." *Prudential Insurance Co. of America v. Liberadore Holding Corp.*, supra at page 52. The "steps" that the mortgagee must take to perfect a claim to rents and profits once a bankruptcy occurs are summarized as follows in 4A *Collier on Bankruptcy*, ¶ 70.16 pp. 161–162.1:

> "(1) Obtain from the bankruptcy court the appointment of a receiver to collect the rents for the benefit of the mortgagee,
> (2) petition the bankruptcy court for an order of sequestration, or (3) secure the bankruptcy court's consent to institute foreclosure proceedings."

In the instant case the mortgagee did take affirmative action and obtained the appointment of a receiver. Under New York law, a receiver is entitled to unpaid rents which accrue prior to the date of his appointment as well as rents due after the receiver's appointment. *New York Life Insurance Co. v. Fulton Development Corp.*, 265 N.Y. 348, 193 N.E. 169 (1934). However, upon the commencement of this Chapter 11 case on May 5, 1980, the receiver, and all other secured creditors, were automatically stayed under Code § 362 from taking any further steps to enforce their liens with respect to the debtor's prepetition obligations.

## CONCLUSIONS OF LAW

1. The lease between Shoppers and Masters was not terminated as a matter of law, nor were the premises surrendered by Masters and accepted by Shoppers when Masters vacated the premises in January 1980, two years after Shoppers served Masters with a Notice of Petition and Petition in a state court summary proceeding.

2. Masters remains liable to Shoppers for rent under the lease in question, which has not been terminated.

3. Masters shall pay to Shoppers, as debtor-in-possession all rentals due and pay-

able under the lease in question after the commencement of this Chapter 11 case on May 5, 1980, in accordance with the mandate of Code § 542(b), notwithstanding that Shoppers has not affirmatively sought court approval for its assumption of the unexpired lease.

4. Masters is not entitled to offset its prepetition claim under the promissory note executed by the prepetition debtor, Shoppers, against its postpetition obligation to the debtor-in-possession for the rentals under the lease in question, which constitute property of the estate within the meaning of Code § 541, since such obligations are not deemed to be mutual obligations for purposes of Code § 553.

5. Peabody, as assignee of the leasehold mortgagee, and the state court receiver are enjoined under Code § 362 from interfering with the right of the debtor-in-possession to collect postpetition rentals.