OPINION OF THE COURT
Burton S. Joseph, J.
The instant action before the court involves former tenants of a landlord suing for the return of security money posted with the landlord pursuant to a lease entered into between the parties; and a counterclaim interposed by the landlord for damages representing the difference in rental moneys that the landlord could have collected from the tenants herein pursuant to said lease and the amount of money actually collected by the landlord from subsequent tenants. The case involves the question as to whether or not a landlord may, after not receiving rent, evict tenants and then hold the evicted tenants for damages.
The facts are as follows: The plaintiffs and the defendant entered into a lease for premises located in Hempstead, New York. The premises were to be used as a gas station and the lease commenced on December 15,1976 and was to terminate on December 14, 1981. The agreed upon rental started at $650 per month for the first month and then increased to $9,000 a year for the next three months of the lease, and then increased to $10,200 for the balance of the first two years of the lease and finally $12,000 per year for the last three years of the lease. The tenants failed to pay several monthly rental payments and the landlord commenced a summary proceeding to evict said tenants from said premises. The summary proceeding was heard before *671 this court on April 16, 1979 at which time the Judge presiding gave a final order of possession for the landlord and stayed the execution thereon until April 30, 1979 and rendered judgment against the tenants in the sum of $3,182.50. Prior to April 30,1979, the tenants vacated said premises, after which the landlord proceeded to satisfy the money judgment therein. The landlord subsequently relet the premises for $600 a month to a tenant who vacated the premises shortly thereafter within the time frame of this lease, and then the landlord rented the premises to a third tenant for the sum of $700 per month. The term of the original lease herein expired on December 14, 1981. The tenants sued for the return of their security and are plaintiffs in the instant action and the defendants interposed a counterclaim against the plaintiffs for damages caused by the breach of the lease.
The question presented is, after having commenced a summary proceeding and having obtained a final judgment against a tenant, who subsequently vacates the premises prior to a warrant being obtained, may the tenant be held for damages caused to the landlord by virtue of the fact that the premises had to be re-leased for a lesser sum of money?
RPAPL 749 (subd 3) states that, “The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant”. In the case at bar, the court is confronted with a situation in which the tenants vacated the premises in compliance with the demand of the petition, but not as a result of the issuance of a warrant. Compliance with the demand is tantamount to a removal by the execution of a warrant and as such terminates the landlord-tenant relationship. (Cornwell v Sanford, 222 NY 248; Rosenfeld v Aaron, 248 NY 437.) By obtaining a final order in the summary proceeding, “ The landlord thus secured the precise remedy he sought when he procured and served the precept.’ ” (Riglander v Nile Tobacco Works, 21 Misc 339, 341.) However, the termination of this relationship in and of itself does not necessarily destroy the landlord’s claim for the deficiency. The actual agreement between the parties is controlling. The agree *672 ment which has been marked as plaintiff’s Exhibit No. 1 in evidence is an original of a lease between the parties.
The tenant has not claimed this lease agreement or any portion thereof to be unconscionable. (Real Property Law, § 235-c.) Therefore, the court finds that the parties dealt at arm’s length when entering this agreement in 1976, and the agreement shall be given full force and effect.
The relevant provisions of the lease are paragraphs 15 and 23. Paragraph 15 deals with the security and when such moneys shall be returned to the tenant. Paragraph 23 contemplates the termination of the landlord-tenant relationship by other than the natural expiration of the lease and provides that the tenant will remain liable for any deficiencies if the landlord relets the premises. This particular section is commonly referred to as a “survival clause” and similar clauses have been held to be valid and enforceable. (812 Park Ave. Corp. v Pescara, 268 App Div 436, affd 294 NY 792.)
The first issue before the court is the return of the security. The commencing of an action for the return of security is premature if the lease calls for the return of the money to the tenant after the expiration of the term of the lease and the term has not yet expired. The commencing of the present action in June of 1980 was contrary to paragraph 15 of the lease; however, since the term of the lease has now expired the court deems the action for the return of the security timely.
The second issue before the court is whether the landlord may recover damages. The parties contemplated this situation and made provision therefor in paragraph 23 of the lease. Such paragraph permits the landlord to relet the premises without releasing the tenants from their liability for damages.
“There can be no doubt of the * * * principle that where a tenant removes from premises after a warrant in summary proceedings has been issued, the conventional relationship of landlord and tenant ceases and the landlord may not recover from the tenant, as rent, subsequent installments thereof for which the lease provides.” (International Pub. v Matchabelli, 260 NY 451, 453.) It can be said without question that the landlord-tenant relation *673 ship between the present litigants ceased to exist in 1979 when the tenant vacated the premises and any duty to pay rent, per se, terminated as of that date. However, the parties provided that the tenant would remain liable for damages.
“What survived was a liability, not for rent, but for damages * * *
“[T]he clear intention thus expressed by the parties was this: Even if the tenant shall be evicted; even if for his * * * rental he will receive no * * * use; even if the relationship of landlord and tenant shall have terminated; these facts, nevertheless, ‘shall not be deemed to have absolved or discharged the tenant from any liability hereunder.’ ” (International Pub. v Matchabelli, supra, p 454.) The lease in the present action does not contain the exact language as quoted from the lease in the International Pub. case, but paragraph 23 is a refinement of that principle. Two factors considered by the court are (1) that the liability of the tenant is limited to the actual damages sustained by the landlord and (2) that the payment of the damages has not been accelerated by the termination of such relationship. A similar clause was upheld in the 812 Park Ave. v Pescara case. The court addressed these two factors and found that their presence precluded a finding of unconscionability. Further, the landlord has in fact sought to mitigate the damages of the tenants by reletting the premises at the highest available rental.
While at first blush it might appear that there was a termination of the lease and of the tenants’ responsibility when the tenants moved out after having been served the dispossess, the law in this area as set forth hereinabove and the surviving contractual relationship between the parties dictates that the landlord may hold the tenants for damages herein. Accordingly, plaintiff is entitled to $1,624 for return of security and the defendant is entitled to $10,650 for damages and, therefore, judgment is rendered herein in favor of the defendant against the plaintiffs in the net sum of $9,026 plus costs, disbursements and interest from December 14, 1981.