■ LAGER ASSOCIATES, Respondent-Appellant, v CITY OF NEW YORK, Appellant-Respondent. [759 NYS2d 116] —In action to recover damages for breach of a lease, (1) the defendant appeals from a judgment of the Supreme Court, Queens County (Posner, J.), entered September 5, 2001, and so much of an amended judgment of the same court, entered November 21, 2001, as, after a bifurcated nonjury trial, is in favor of the plaintiff and against it in the principal sum of $931,854, plus statutory interest commencing July 1, 1985, and (2) the plaintiff cross-appeals (a) from the same judgment, and, (b) on the ground of inadequacy, from so much of the same amended judgment as is in its favor and against the defendant in the principal sum of only $931,854.

Ordered that the appeal and cross appeal from the judgment are dismissed as abandoned (*see* 22 NYCRR 670.8 [c], [e]), without costs or disbursements; and it is further,

Ordered that the amended judgment is modified, on the law and the facts, by (1) deleting the provision thereof awarding the plaintiff the principal sum of $931,854, and substituting therefor a provision awarding the plaintiff the principal sum of $630,000; and (2) deleting the provision thereof awarding statutory interest on the principal sum of $931,854, and substituting therefor provisions awarding statutory interest on the principal sum of $630,000 from July 1, 1985, and statutory interest on any future award for reimbursement of forbearance fees from October 26, 1988; as so modified, the amended judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for a new determination on the issue of reimbursement of forbearance fees and a recomputation of statutory interest on those fees from October 26, 1988, in accordance herewith, and the entry of an appropriate second amended judgment.

The plaintiff Lager Associates (hereinafter Lager) is a partnership that owns a building in Jamaica, Queens, which formerly housed a Gertz Department Store. In the 1980s the

building was converted into office space. Certain space in the building was leased to the State of New York and two floors were leased to the defendant City of New York for a term of 20 years. Although the City lease was signed on August 2, 1984, it provided for certain alterations and improvements to be made to the space by Lager by June 30, 1985, before the City could occupy it. Due to numerous delays, the City did not take occupancy until May 20, 1988, and the City commenced paying rent at that time.

Lager commenced this action seeking damages for the unpaid rent and other expenses it incurred due to the delay, the entirety of which Lager alleged was attributable to the City. The City contended that Lager was responsible for the entire 35-month delay in payment of rent. After a bifurcated nonjury trial, the court broke down the period of delay into 11 distinct time periods, and allocated responsibility for the delay for each of the time periods, with a determination that 16½ months of the delay was attributable to the City and 15½ months of the delay was attributable to Lager, with the remaining three months delay attributable to neither party, and awarded to Lager damages of $630,000 for lost rent, $236,854 for the reimbursement of forbearance fees Lager paid to the Bank of New York, and $65,000 for the reimbursement of fees allegedly paid to Barclay's Bank in connection with a letter of credit.

On their respective appeal and cross appeal, each party contends that the court erred in failing to find the other party responsible for the entire delay. The City, relying upon the premise that Lager frustrated or delayed performance of the lease by seeking a contract modification, argues that Lager cannot recover damages for delay during that period. While a party to a contract cannot rely on the failure of another to perform a condition precedent where the party has frustrated or prevented the occurrence of the condition (*see Kooleraire Serv. & Installation Corp. v Board of Educ.,* 28 NY2d 101, 106 [1971]), the record indicates that Lager's request for an unrelated contract modification had no bearing upon the City's ability to perform its initial obligation under the lease to provide space layouts to Lager in a timely fashion. Despite its knowledge that Lager could not complete construction by the date required under the lease unless it provided space layouts in a timely fashion (also required by the lease), the City failed to provide the layouts until approximately two months after Lager would have needed them in order to complete the project as contemplated. As such, the City's argument is without merit.

Lager, on the other hand, contends that the City is wholly

responsible for the delay because the City breached the lease by persisting in proposing plans for tenant improvements which exceeded those in the portion of the building leased by the State. Lager argues that extrinsic evidence indicates that the parties intended that the standards for tenant improvements for the City would be equal to those of the building improvements made to the state space in the same building. However, where a contract is clear and unambiguous on its face, it must be enforced according to its terms and extrinsic evidence cannot be considered (*see R/S Assoc. v New York Job Dev. Auth.,* 98 NY2d 29 [2002]; *W.W.W. Assoc. v Giancontieri,* 77 NY2d 157 [1990]). Here, article 6 of the lease unequivocally requires that the quality of and the standards for "building improvements," rather than "tenant improvements," were to be equal to the building improvements made to the state space. Furthermore, article 6 of the lease defines "tenant improvements" by enumerating examples and specifically limiting that term's application to "non-building improvements." Thus, the lease explicitly states that "building improvements," the standards for which were required to be equal to the building improvements made to the state space, and "tenant improvements," for which there were no specific limitations on standards, are mutually exclusive categories of improvements. There is no language in the lease requiring that state quality and standards of improvements apply to "tenant improvements" in the City space, since the lease can only be read to require that state quality and standards apply to building, but not tenant, improvements. As such, the language of the lease is clear and unambiguous, and the City was not in violation of the lease by supplying line drawings for tenant improvements which exceeded the standards for the state building improvements in the building.

In fashioning an award of damages representing the present value of the amount of rental income Lager lost due to the delay attributable to the City, the court accepted the calculation of damages by the City's expert witness based upon an estimate of the present value of the rent income Lager would have received but for the delay. Since at the time the City's expert witness performed his calculations, the court's determination regarding the allocation of responsibility for the delay had not yet been made, the expert witness created three models assuming delays in the commencement of payment of rent of 8, 17, and 35 months. The court took the witness's estimation of damages of $630,000 for a 17-month delay, and accepted this amount as its award to Lager representing "lost rents."

The City contends that the court's acceptance of this figure

was erroneous, since its expert witness's estimate of damages was based upon a 17-month period of delay, while the court determined that the City is liable for only 16½ months of delay. As such, the City argues that the court's award exceeded the amount to which Lager is entitled, by awarding Lager damages for an extra one-half month of delay that should not have been attributed to the City. Lager, on the other hand, argues that the court should have accepted the calculation of damages as recommended by its expert witness, who testified that Lager is entitled to an award of damages calculated by simply totaling the rent that it did not receive from the time that the rent payments were expected to begin until the time that the City took occupancy and began paying rent.

It is peculiarly within the discretion of the trier of fact to assess the evidence and the persuasiveness of testimony as to estimates and evaluations of damage (*see National Conversion Corp. v Cedar Bldg. Corp.,* 23 NY2d 621, 630 [1969]; *Dean v Long,* 127 AD2d 899 [1987]). When from the nature of the case, the amount of damages cannot be ascertained with certainty, it is proper to place before the trier of fact all the facts and circumstances of the case having a tendency to show the damages or their probable amount, so as to enable him or her to make the most intelligent and accurate estimate which the nature of the case will permit (*see Duane Jones Co. v Burke,* 306 NY 172 [1954]). The circumstances presented here, where the parties each presented expert witnesses' theories on the calculation of damages due to the delay, are similar to those faced by a trier of fact who must determine the valuation of a business. In those circumstances, the determination of the trier of fact, if it is within the range of the testimony presented, will not be disturbed on appeal where the valuation of the business rested primarily on the credibility of expert witnesses and their valuation techniques (*see Dempster v Dempster,* 236 AD2d 582 [1997]).

While Lager notes the general proposition that "[i]n an action by a landlord for breach by [the] tenant of a lease, the amount of the damage, prima facie, is the rent reserved" (*812 Park Ave. Corp. v Pescara,* 268 App Div 436, 441 [1944], *affd* 294 NY 792 [1945]; *see Bruson Hgts. Corp. v State of New York,* 281 App Div 371 [1953]), this proposition contemplates circumstances in which the tenant did not remain in occupancy for the entire term of the lease. Here, the City is still in occupancy pursuant to the terms of the lease, and unless the City elects to terminate the lease pursuant to a provision of the lease unrelated to the instant action, Lager will receive every dollar

called for in the lease, although the term of the lease was postponed by approximately three years. Thus, to award Lager damages in accordance with its expert's theory and calculations would be tantamount to granting Lager a windfall. The court's acceptance of the theory of the City's expert, under which Lager would be compensated for an estimate of the present value of the rental income Lager would have received but for the delay attributable to the City, would best put Lager in the position it would have been in but for the delay attributable to the City (*see generally Freund v Washington Sq. Press,* 34 NY2d 379, 382 [1974] [stating the basic goal of contract damages awards of putting the injured party in as good a position as that party would have been put by full performance of the contract]). Accordingly, the court's acceptance of the City's expert's theory of damages was a provident exercise of discretion.

The City complains that in accepting the City's expert's theory and calculation of damages for a 17-month period, the court, in effect, awarded Lager damages for an extra one-half month of delay to which it should not have been entitled, as the court found the City responsible for only 16½ months of delay. However, the court was undoubtedly aware of this slight discrepancy and apparently concluded that since both its determination that the City was responsible for 16½ months of delay and the City's expert's theory based upon 17 months of delay were merely best estimates, acceptance of the expert's calculations for a 17-month period was appropriate under the circumstances. We agree with this assessment and perceive no reason to modify this award.

Since the court determined that the City was responsible for 16½ months of delay, Lager is entitled to foreseeable and probable damages attributable to the City's breach of the lease (*see Ashland Mgt. v Janien,* 82 NY2d 395, 403 [1993]). To that end, the court awarded Lager damages of $236,854 in forbearance fees Lager paid to the Bank of New York in connection with two Bank of New York loans, and $65,000 for fees allegedly paid to Barclay's Bank for a letter of credit. While the latter award simply represents the amount that Lager alleged it paid to Barclay's Bank, the court arrived at the former award by multiplying the total amount of forbearance fees Lager paid to the Bank of New York ($459,375) by 51.56%, representing the City's proportionate share of the total 32-month delay in construction which the court attributed to the parties, to arrive at a figure of $236,854.

The foregoing award for forbearance fees is erroneous. These

forbearance fees accrued because of Lager's failure to repay two loans from the Bank of New York in the amounts of $18.9 million and $5.1 million. Lager acknowledged both at trial and in responses to interrogatories that none of the proceeds from the first loan were used in connection with construction of the City space, and that there were no increased construction loan costs incurred with respect to the City space under the first loan. Lager did establish that proceeds from the second loan were used in connection with the construction of the City space, and that there were increased construction loan costs incurred with respect to the City space under the second loan. Since the forbearance agreement dated September 29, 1986, which required Lager to pay to the bank $189,000 per year to refrain from exercising its remedies, demonstrates that the forbearance fee was related to defaults on *both* Bank of New York loans, the court erred in using the total forbearance fees Lager paid to the bank in arriving at its award. As the record does not indicate any mechanism for distinguishing the amounts of forbearance fees attributable to each loan, we must remit the matter to the Supreme Court, Queens County, for a new award based only on the forbearance fees generated pursuant to the $5.1 million loan.

Furthermore, the court erred in determining that 51.56% was the City's proportionate share of the forbearance fees. This apportionment of responsibility for delay improperly omits the three additional months of delay which the court specifically did not attribute to either party. Thus, in calculating the new award, the court should employ the ratio between the amount of delay attributable to the City (16½ months) and the total 35-month delay beyond the date when Lager anticipated that payment of rent would commence.

The City also challenges the date from which the court measured statutory interest with respect to the forbearance fees. The court used July 1, 1985, as the measuring date for statutory interest for all damages, whether for rental income not received or for costs or expenses arising out of the City's delay. Pursuant to CPLR 5001 (b), interest should be computed from "the earliest ascertainable date the cause of action existed," but "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Contrary to Lager's contention, July 1, 1985, was not a reasonable date to use for all damages. While that date corresponds to the expected date of occupancy and the expected commencement of payment of rent of June 30,

1985, Lager did not pay the forbearance fees until October 26, 1988. In fact, the forbearance fees did not even accrue until May 24, 1986, the date upon which Lager defaulted on the Bank of New York loans, and the forbearance agreement itself was dated September 29, 1986. While Lager argues that it incurred considerable construction costs and damages as early as September 1984, the court's award is unrelated to those costs and damages. Accordingly, although July 1, 1985, is an appropriate date for the calculation of interest for lost rent (and the City does not argue to the contrary), it is not a reasonable date from which to calculate interest for the other damages awards. Rather, the appropriate date for the commencement of the accrual of statutory interest with respect to the forbearance fees is October 26, 1988, the date Lager paid the forbearance fees. Contrary to determinations of the court, the City never conceded that July 1, 1985, was the proper date, nor did the parties stipulate to the July 1, 1985, date for the calculation of interest on all of the awards.

The recovery by Lager of the alleged Barclay's Bank letter of credit fees was also error. Lager was unable to produce the letter of credit at trial. According to the testimony of Lager's expert witness, the letter of credit was secured in 1984, before the City executed the lease and prior to the consummation of the second Bank of New York loan. Lager did not present any documentary evidence of payments to Barclay's Bank of the letter of credit fees; Lager only presented testimony of an expert witness and the worksheets prepared by that witness. While Lager's expert relied upon a reference to a letter of credit in the 1984 commitment letter issued in connection with the first Bank of New York loan, that reference was merely a general one, requiring Lager to provide the Bank of New York with a "clean, irrevocable letter of credit for not less than $2,000,000 from a bank and in form acceptable to us." Moreover, there was no proof that the letter of credit or the fees associated therewith had anything to do with the second Bank of New York loan, which was the only loan from which consequential damages would be foreseeable to the City.

Given Lager's failure to produce the letter of credit, the absence of proof that letter of credit fees were paid, and the lack of evidence that any such alleged payments were related to the second Bank of New York loan, the court erred in awarding any damages for the Barclay's Bank letter of credit fees.

The parties' remaining contentions are without merit. Altman, J.P., Krausman, McGinity and Cozier, JJ., concur.