YONKERS FUR DRESSING COMPANY, INC., Appellant, *v.* ROYAL INSURANCE COMPANY, LTD., et al., Respondents. (Two cases.)

YONKERS FUR DRESSING COMPANY, INC., Appellant, *v.* STANDARD FIRE INSURANCE COMPANY et al., Respondents.

YONKERS FUR DRESSING COMPANY, INC., Appellant, *v.* NATIONAL LIBERTY INSURANCE COMPANY et al., Respondents.


**Practice — settlement — effect of settlement of actions — court without power to set aside settlement on motion in the actions on conflicting affidavits raising anew the disputes once settled.**

1. The settlement of an original controversy involved in an action, resulting in a new agreement to the effect that the " litigation is settled and terminated," the defendants having agreed to pay a stated sum in full settlement, is not a mere arrangement between counsel from which a party may be relieved, in the discretion of the court. It is the settlement and termination of the litigation bringing into existence a contract which, if valid, is final and to be sustained by the court without regard to the validity of the original claim.

2. That a witness has been newly discovered by the defendants who would testify to facts which, if accepted as true by the jury, would constitute a complete defense to the original action, when such witness is contradicted by witnesses for plaintiff, is not a sufficient ground for setting aside the settlement on motion in the action, on conflicting affidavits raising anew the same dispute once settled. (*Van Nuys* v. *Titsworth*, 57 Hun, 5; *Sperb* v. *Met. El. Ry. Co.*, 10 N. Y. Supp. 865; affd., 123 N. Y. 659, distinguished.)

*Yonkers Fur Dressing Co.* v. *Royal Ins. Co.* (2 cases), 222 App. Div. 688, reversed.

*Yonkers Fur Dressing Co.* v. *Standard Fire Ins. Co.*, 222 App. Div. 688, reversed.

*Yonkers Fur Dressing Co.* v. *National Liberty Ins. Co.*, 222 App. Div. 688, reversed.

(Argued February 15, 1928; decided March 27, 1928.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 11, 1927, which affirmed an order of Special Term granting a motion to vacate, set aside and annul an agreement settling the above-entitled actions.

The following questions were certified: " 1. Did the court at Special Term have the power upon defendants' motion and over plaintiff's objections, to set aside and annul the settlement agreement in the absence of any claim of fraud, mistake or other reason sufficient to invalidate a contract, after the parties by their respective attorneys had duly made a written agreement settling the above-entitled four actions for the sum of $92,500, and after the said four cases had been marked settled and discontinued in open court, pursuant to the settlement agreement? 2. Did the court at Special Term have the power, upon defendants' motion and over plaintiff's objection, upon the papers there presented, to set aside and annul the settlement agreement made by the parties? 3. Assuming that the court at Special Term had the power to pass upon the motion to set aside the settlement agreement, did the defendants in their moving papers present any facts authorizing the court to grant the motion? "

*Frank H. Hiscock* and *Alfred B. Nathan* for appellant. The compromise and settlement was binding and effective upon all parties and could not be set aside, except for well-defined reasons which did not exist. Moreover, the court had no power to grant such relief on motion under the circumstances of this case. (*Moers* v. *Moers*, 229 N. Y. 294; *Smith* v. *Insurance Co.*, 62 N. Y. 85; *Sears* v. *Grand Lodge*, 163 N. Y. 374; *Ostrander* v. *Ostrander*, 199 App. Div. 437; *Morehouse* v. *Second Nat. Bank*, 98 N. Y. 503; *Bandman* v. *Finn*, 185 N. Y. 508; *Lockwood* v. *Ins. Co.*, 175 App. Div. 24; 223 N. Y. 714; *Commercial Bank* v. *Beers*, 202 N. W. Rep. 757 [Iowa]; *Brown* v. *Nichols,*

42 N. Y. 26; *Acker* v. *Ledyard*, 8 N. Y. 62.)   The court had no power at Special Term, on motion, to annul and set aside the contract of settlement made between the parties.   If for any reason that contract was invalid or voidable the defendants' right to relief was confined to an action in equity for rescission.   (*Equitable Trust Co.* v. *MacLaire*, 77 Misc. Rep. 116; *Penn Steel Co.* v. *N. Y. City Ry. Co.*, 165 Fed. Rep. 467; *Lilly* v. *Haynes Co.*, 48 N. D. 937; *Matter of Tilden*, 117 Misc. Rep. 656; *Matter of Jetter*, 78 N. Y. 601; *Bates* v. *Harding*, 17 App. Div. 606; *Rhodes* v. *Dutcher*, 6 Hun, 453; *Dietz* v. *Dietz*, 2 Hun, 339; *Hill* v. *Hermans*, 59 N. Y. 396; *Conrad* v. *Conrad*, 123 App. Div. 385; *R. R. Co.* v. *Johnston*, 84 Hun, 83; *Insurance Co.* v. *O'Donnell*, 146 N. Y. 275.)

*Sydney A. Syme* and *Leo Levy* for respondents.   Question No. 2, if entertained, should be answered in the affirmative.   (*Turner* v. *N. Y. C. & H. R. R. R. Co.*, 74 Misc. Rep. 524; 168 App. Div. 359; *Sperb* v. *Met. El. Ry. Co.*, 10 N. Y. Supp. 856; 123 N. Y. 659; *Barry* v. *Mut. Life Ins. Co. of N. Y.*, 53 N. Y. 536; *Hallow* v. *Hallow*, 200 App. Div. 642; *Humphries* v. *Shapiro*, 187 App. Div. 96; *People ex rel. Tappin* v. *Cropsey*, 176 App. Div. 415; *Van Nuys* v. *Titsworth*, 57 Hun, 5.)

POUND, J.   These actions were brought in the name of the plaintiff by a committee, representing all of the creditors of plaintiff.   The plaintiff, a New York corporation, was engaged in the fur dressing business and had a large plant located at Yonkers, N. Y., where it dressed furs and skins belonging to other persons.   It had procured policies of fire insurance from the defendants to protect the merchandise of plaintiff's customers against loss and damage by fire; also upon the fixtures and machinery contained in its plant; also policies of fire insurance protecting it against loss of profits, as a result of a fire in its plant.

A fire occurred in plaintiff's plant on February 19, 1926, as a result of which it claims that merchandise contained in the plant, and fixtures and machinery were damaged and destroyed. Shortly after the fire it developed that the merchandise of plaintiff's customers in the plant was greatly under-insured; that the sound value of such merchandise was claimed to be the sum of $171,721.12 and that the damage thereto by the fire was greater than $145,000, while the plaintiff had only $90,000 insurance thereon. The other items, machinery and fixtures, profits and use and occupancy, were fully insured.

As a result of the under-insurance of the merchandise of plaintiff's customers, the plaintiff, at the insistence and request of certain of its creditors, assigned all the policies of insurance to a committee of five, as trustees for the creditors, under an instrument dated April 14, 1926, which transferred absolutely all plaintiff's right, title and interest in the policies, with the proviso that if the amounts received from the companies exceeded the full amount of the claims of plaintiff's creditors, the surplus would be turned back to plaintiff. The assignment was made not only to protect the merchandise creditors of the plaintiff, but all other creditors as well.

The committee was given power to institute suits upon the policies in the name of the assured and to settle and compromise such suits for any amount the committee thought proper; also to hire counsel and to incur disbursements and expenses with reference to the collection of the claims from the insurance companies. The total amount of claims under all the policies exceeded $250,000. Payment having been refused by the insurance companies, suits were brought, in July or August, 1926, by the committee in the name of the plaintiff.

The answers of the defendants, which were verified, contained in addition to general denials, an affirmative

defense of fraud and false swearing in connection with the proofs of loss, false and fraudulent books of account, incendiary origin of the fire, arson and fraudulent removal of merchandise before the fire.

The actions were preferred upon the application of plaintiff and set for trial for April 18, 1927. Shortly after that time and upon the eve of trial Mr. Levy, the attorney representing all defendants, and Mr. Nathan, the attorney for the committee and nominally for the plaintiff, began negotiations for settlement.

Mr. Levy asked Mr. Nathan to ascertain from the committee the lowest amount for which the cases could be settled. Mr. Nathan called a meeting of the creditors' committee and was told that $100,000 was the minimum for which the cases would be settled. This was communicated to Mr. Levy and after further negotiations back and forth a settlement for $92,500 was agreed upon, leaving the defendants in all four cases to apportion this amount between themselves as they saw fit.

Mr. Levy stated that he had been trying for some time to secure evidence that the fire was incendiary and that the plaintiff had been guilty of fraud and false swearing as alleged in the answers, and that he " being without sufficient evidence to warrant going to trial, arranged a stipulation of settlement of these cases as set forth and embodied in the letters exchanged between the plaintiff's attorney of record, Alfred B. Nathan and deponent, which said letters are hereto attached and made part hereof."

The settlement was finally consummated and confirmed on May 5th and 6th, 1927, in letters exchanged by the attorneys for the respective parties. The cases in the meantime had been set for trial for Monday, May 9th, 1927, and plaintiff's attorney was actually ready to proceed with the trial at that time, had the settlement not been made.

The letters read as follows:

(Letterhead of Alfred B. Nathan and Howard S. Imbrey)
             "110 William St., N. Y. C.
                    "*May 5th*, 1927.

" LEO LEVY, Esq.,
      "110 William Street,
            "New York City:
        "Re: Yonkers Fur Dressing Co. v. Ins. Cos.

" DEAR SIR.— I confirm our talk to-day as a result of which *we have agreed that the above entitled litigation is settled and terminated, your clients, the insurance companies in interest, having agreed to pay the sum of $92,500 in full settlement of all claims apportioned as the companies see fit as between themselves.*

"*The suits are to be marked settled upon the call of the calendar next Monday.* General releases are to be executed by the assured and by or on behalf of the trustees under the terms of the agreement of April 14th, 1926, and stipulations of discontinuance are to be exchanged so that an order of discontinuance can be entered in due course.

" It is further understood between the trustees of the creditors representing the fur industry and the insurance companies that this disposition of the litigation shall in no wise be deemed prejudicial to the criminal proceedings and inquiry now pending in Westchester County, and is the attempt to dispose of without prejudicing the rights of individuals and claimants under the terms of the policies involved, as bailors.

" It is further understood that you are to place in my possession all available data bearing upon the *bona fides* of all the claims that you have obtained in the course of your investigations and inquiries so that no individual or concern shall receive through the trustees any moneys to which they, in fact, are not entitled, and so that those who have participated in any wrong shall be properly exposed.

" With respect to the latter, I am authorized by Mr. Joseph Steiner, individually, and by the firm of Joseph

Steiner & Bros. that they will contribute respectively $2,500 toward the expense required for the furtherance of the criminal investigation in the hands of the District Attorney of Westchester County, providing any such further proceedings be had with their knowledge and consent.

" The trustees agree to hold the companies harmless against any suit by any alleged bailor.

" This is to confirm the understanding above outlined.

" Yours very truly,
" ALFRED B. NATHAN."

" *May* 6, 1927.

" ALFRED B. NATHAN, Esq.,
" No. 110 William St.,
" New York City:

" Re: Yonkers Fur Dressing Co. v. Insurance Companies.

" DEAR SIR.— I acknowledge receipt of yours of the 5th inst. re the termination of the litigation above entitled.

" The suggestions as therein embodied are acceptable, although the language of one or two paragraphs is somewhat obscure, which I hasten to correct.

" It is clearly understood that the disposition of the pending litigation is not alone without prejudicial intent to the criminal proceedings pending in Westchester County, but is intended to aid such proceedings and save from further injury those innocent bailors of the named assured whose property was involved in the fire of questionable origin.

" The Insurance Companies will render every aid and assistance in the further exposure of those responsible and in the attempt to secure their punishment.

" It is of course the further understanding that the guaranty by the Trustees to hold the Insurance Companies harmless from any further or other claim, is a moving consideration for this disposition of the litigation.

" There is omitted from your letter one important fact of our understanding, and that is that should it eventuate

hereafter at any time within say three years that any concern or individual has received moneys to which such individual or concern is not properly entitled, restitution thereof shall be made and is guaranteed to the insuring companies in interest.

" Will you therefore prepare in accordance with the understanding the necessary documents of release, and will you also secure for inspection and examination, the temporary delivery of the policies which it is claimed were in force?

" Of course you understand that everything will be done to facilitate a speedy closing and disposition of the matter, but in view of the complications there will be some little delay.

" Yours very truly,
" LEO LEVY.

" P. S.— The temporary inspection of the policies is desired to check the lists of insurance."

After the receipt of the letter of May 6th, 1927, from defendants' attorney, plaintiff's attorney told Mr. Levy that the amendments and changes made in his letter of the 6th were entirely in order. This was done by Mr. Nathan after he had communicated with the committee and obtained its assent thereto. On the same day, May 6th, 1927, Mr. Nathan wrote Mr. Levy, requesting the latter to prepare the general releases that were to be executed by the assured and by the committee, so that they could be signed in due course. On the next day, May 7th, 1927, Mr. Levy's office phoned Mr. Nathan and requested the insurance policies involved in the four cases, which were turned over to him on that date. Mr. Levy has kept the policies in his possession.

When the cases appeared on the day calendar for trial on Monday, May 9th, 1927, they, in accordance with the agreement of settlement, were marked " settled and discontinued " in open court by counsel for all parties. Nothing further occurred until June 2, 1927, upon which

date defendants' attorney served motion papers upon an application to vacate and annul the settlement agreement. The original motion papers consisted of an affidavit of Mr. Levy who swore in substance that after the settlement was made he had discovered a witness, Stockley, who would testify that the fire on February 19, 1926, was incendiary in origin and that Nathan Ressler, plaintiff's president, had employed him to set the plant on fire and had also removed merchandise from the plant in anticipation of the fire. This affidavit was corroborated by the affidavit of Stockley who swore that he was employed by the plaintiff's president to set the place on fire and also that a large quantity of customers' merchandise had been removed from the plant before the fire.

Answering affidavits of Mr. Nathan and Ressler were read in opposition. Ressler denied the allegations of Stockley's affidavit. Mr. Nathan raised the objection that the settlement agreement should not be set aside on a motion in the action; that an equitable action to set aside the settlement was the proper remedy.

Mr. Levy in reply asserted that the settlement agreement was unauthorized for the reason that the assignment in question provided that the trustees could consent to a settlement only by the written consent of three trustees, which had not been obtained; that plaintiff's consent was also necessary because it was to receive any surplus over the claims of creditors; that a receiver appointed on a judgment creditor's action after the assignment in question was a necessary party to the settlement agreement.

Mr. Nathan sought to meet these objections. Plaintiff would get no part of the proceeds of the settlement agreement as the claims of creditors would exhaust the fund. Ressler, the president, knew of the settlement and made no objection thereto. All the members of the committee had expressly approved and authorized the settlement before it was made. The receiver could not

intervene because the assignment was prior to his appointment and his only remedy was an action to set aside the agreement if he could show that it was in fraud of creditors. The judgment creditor in the action in which the receiver was appointed was entitled to come in and share the benefits of the settlement.

. The motion was granted without opinion. The Appellate Division unanimously affirmed without opinion but allowed an appeal on certified questions to this court.

The settlement of the original controversies involved in these actions resulted in a new agreement to the effect " that the above entitled litigation *is settled and terminated,* * * * the insurance companies in interest having agreed to pay the sum of $92,500 in full settlement of all claims." This is not a mere arrangement between counsel made during the pendency of the case from which a party might be relieved when both parties could be restored substantially to their former position in court and when it would be inequitable to hold the parties to it. (*Magnolia Metal Co.* v. *Pound,* 60 App. Div. 318; *Hallow* v. *Hallow,* 200 App. Div. 642.) It is the settlement and termination of the litigations, marking a fresh start by the plaintiff from a new coign of vantage. The compromise was wholly foreign and extrinsic to the litigation and to any action by the court. The signing of stipulations and entry of orders of discontinuance were not conditioned upon the payment of the money. They would be evidence merely, not the fruit of the settlement. When the cases were marked " settled and discontinued " in open court by the parties, it was as if they had never been begun.

A contract of settlement, if valid in itself,. is final and is to be sustained by the court without regard to the validity of the original claim. (*Smith* v. *Glens Falls Ins. Co.,* 62 N. Y. 85; *Sears* v. *Grand Lodge A. O. U. W.,* 163 N. Y. 374.)

The question arises whether such a settlement and

compromise of disputed claims may be set aside on motion in the actions on the ground that a witness has been newly discovered by the defendants who would testify to facts which, if accepted as true by the jury, would constitute a complete defense to the original actions, when such witness is contradicted by the plaintiff's witness. The court unquestionably exercises a large control over all proceedings in an action so long as the action is pending and the parties can be restored to their original position. (*Barry* v. *Mutual Life Ins. Co.*, 53 N. Y. 536, and cases cited.) In the exercise of its discretion it relieves litigants from stipulations signed by counsel during the pendency of the case, on motion in the action, when such stipulations were either unadvisedly or inadvertently signed, or when the circumstances reveal that the stipulation should not be held, in order to promote justice and prevent wrong. General language in opinions must, however, be read in connection with the question decided and the question here raised has never been passed on directly by this court.

Stipulations and agreements of settlement have, no doubt, been set aside on motion. (*Van Nuys* v. *Titsworth*, 57 Hun, 5.) Only one such case has reached this court. (*Sperb* v. *Met. El. Ry. Co.*, 10 N. Y. Supp. 865; affd., without opinion, 123 N. Y. 659.) The question there was primarily one of the authority of plaintiff's attorney to sign the stipulation. Without such authority, it was a nullity. An examination of the record discloses that the stipulation provided that if the amount agreed on should not be paid before a given date " plaintiff may thereupon enter judgment for the agreed amount." The action was still pending when the stipulation was set aside and it was subject to the supervision of the court because judgment might be entered thereon. The language of VAN BRUNT, P. J., to the effect that such a stipulation might be set aside on motion in any case if given unadvisedly and if it would be inequitable to hold

plaintiff to its terms, was, first, *dictum*, and secondly, used in view of the right of the plaintiff to be relieved from the particular situation. In neither event was it binding upon this court.

These cases and all others cited are distinguishable from the present case. The settlement was made, not subject to judicial action, but by contract. Fraud was the issue in the actions but suspicion had produced no witness. On the eve of trial, with no defense, although the actions had been pending for a year, with a judgment for the full amount claimed confronting the defendants, the parties *settled and terminated* the litigation.

The agreement of settlement was, under these circumstances, entered into by defendants, not lightly, inadvertently, inadvisedly or improvidently, but in order to make the best terms possible with the plaintiff. The hope of gaining was balanced against the risk of losing. There was an exchange of equivalents, irrevocable except for fraud, a settlement of a controversy presumably honest. The old causes of action were terminated. A new liability was substituted therefor. The nature of the new cause of action we need not define. Enough to say that it superseded the old.

Defendants may be able in an independent suit to upset the settlement for reasons that would invalidate a contract, such as fraud or over-reaching. But when a compromise results in the termination of an action and the execution of a new agreement giving effect to the settlement, it cannot be undone in the discretion of the court, on motion in the action and on conflicting affidavits raising anew the same dispute once settled, merely to bring about a final disposition of the original action on its merits. (*Emeris* v. *Woodward,* 43 Ch. D. 185; *Lilly* v. *Haynes Co-op. Coal Mining Co.,* 48 N. D. 937.)

The other objections to the reversal of the order below seem unsubstantial. At least they should not be disposed of on conflicting affidavits.

The order of the Appellate Division and that of Special Term should be reversed and the motion to vacate the settlement denied, with costs in the Appellate Division and in this court and ten dollars costs of motion. The seocnd and third questions certified answered in the negative and the first question not answered.

CARDOZO, Ch. J., CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.