In re Carl H. NEUMAN, d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company, Debtor.

Carl H. NEUMAN, d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company, Plaintiff-Appellee,

v.

BLUE CROSS/BLUE SHIELD OF GREATER NEW YORK, Defendant-Appellant.

No. 85 Civ. 6677 (RLC).

United States District Court, S.D. New York.

Oct. 22, 1985.

Lola S. Lea, P.C., New York City, for appellee.

Rudolph W. Giuliani, U.S. Atty., for the S.D. of N.Y., for appellant; Nancy Kilson, Asst. U.S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Appellant, the Health Care Financing Administration ("HCFA") of the United States Department of Health and Human Services,[1] appeals from the August 6, 1985 decision of Judge Prudence Abram of the United States Bankruptcy Court and a series of orders issued pursuant to that decision dated August 8, 21, and 23, 1985. Judge Abram ordered disbursement of $406,800 in Medicare Trust funds to appellee, Carl H. Neuman d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company, according to a specified payment schedule. On September 4, 1985, this court stayed these orders pending this appeal.

The history of this matter is a procedural morass. To limit further complication of issues, a September 4th order of this court enjoined further proceedings in the United States Bankruptcy Court related to *In re Neuman* pending the disposition of this appeal. For purposes of this appeal the procedural history is condensed to include only that which is relevant to the issues before the court on this appeal.

At issue on appeal is the contractual relationship between appellant, as administrator of Medicare funds, and appellee as a Medicare provider. Appellant argues that Judge Abram erred in her interpretation of a December 21, 1984 stipulation ("stipulation") between the parties. For the reasons stated below, we agree and the orders of the Bankruptcy Court are now reversed.

*History*

Appellee filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on December 11, 1984. At that time, appellee owed millions of

---

1. Blue Cross/Blue Shield of Greater New York is the nominal defendant/appellant in this proceeding. HCFA, however, is the real party in interest. Blue Cross acts as HCFA's fiscal intermediary under the Medicare Program.

dollars in Medicare overpayments.[2] Appellant was collecting these overpayments from two sources. First, appellant withheld $50,000 from each partial interim payment ("PIP"). These payments, made biweekly, cover anticipated expenditures for Medicare services rendered, based on estimates from previous expenses under the program. A retroactive adjustment made at the end of each reporting period reflects actual costs to the provider. 42 U.S.C. § 1395g; 42 C.F.R. § 405.454(j). In the event of an overpayment, the government withholds funds equivalent to the overpayment from future PIP payments. The second source of recoupment was appellee's year end Volume Adjustment. Adjusting for the high fixed costs of hospitals, these payments are disbursed annually to hospitals in New York State that have suffered a decrease in the average length of patient stays for the year, as compared with the 1981 base year. Appellant recouped the 1983 Volume Adjustment in its entirety due to appellee's large outstanding debt to the Medicare Trust Fund.

Appellee brought an adversary proceeding against appellant on December 17, 1984, seeking to enjoin appellant from recouping alleged pre-petition debt from future Medicare payments. Appellee claimed he would be forced to close the hospital immediately unless the recoupment rate was reduced. In an effort to ease appellee's extreme financial crisis, appellant agreed to reduce the recoupment rate from the PIP payments and the annual Volume Adjustment. A stipulation signed by the parties on December 21, 1984, was so ordered by Judge Edward J. Ryan of the United States Bankruptcy Court. It was subsequently amended in April and May of 1985.[3] It is the interpretation of this stipulation that is at issue in this appeal.

Specifically three paragraphs are significant to the appeal:

¶ 1 Pursuant to § 365 of [collectively Carl H. Neuman, d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company are the "DIP"] the Bankruptcy Code, Neuman and the DIP hereby respectively reaffirms [sic] and assumes the Agreement, with all of its preexisting terms and provisions, except as modified by the provisions of this stipulation and order.

¶ 5 The DIP shall report to HCFA by telephone ... HCFA may revise the amount of subsequent PIP payments to be made to the DIP on the basis of any fluctuations in patient census reflected in the aforementioned reports. Absent any closing prior to January 1, 1985, the Hospital is entitled to receive a volume adjustment for the year ended December 31, 1984. (The "Volume Adjustment") HCFA is hereby authorized to make an immediate Recoupment of up to $250,000 from the Volume Adjustment. Any balance from the Volume Adjustment after Recoupment shall be paid to the Hospital forthwith.

¶ 6 If, after the Filing Date, HCFA determines that overpayments have been made to the Hospital after the Filing Date, the DIP shall repay such overpayments in full within thirty (30) days of receipt of written notification ... Such overpayments may be determined on the basis of the Hospital census data reported in accordance with paragraph "5". It is expressly agreed that the notification provided for in this paragraph shall be the only notification of such overpayments which will be required of HCFA.

When the stipulation was signed, the parties believed the 1984 Volume Adjustment, referred to in paragraph 5, would be approximately $450,000. It was understood that appellee would receive about $200,000 after appellant recouped the amount it ad-

---

2. Although the amount is disputed, HCFA has filed a claim against the hospital for $6,796,377 in pre-petition overpayments.

3. Two amendments to the stipulation, dated April 26, 1985 and May 14, 1985, postponed

resumption of recoupment at the level of $50,000, from April until July, 1985, therefore, increasing the amount of deferred recoupment from the 1984 Volume Adjustment.

vanced in the form of deferrals under paragraph 5 of the agreement. The parties failed, however, to include the approximated figures in the body of the stipulation or in the amendments. Subsequently it was learned that the $450,000 was a gross underestimation of the 1984 Volume Adjustment, which was later calculated to be $2.1 million.

No post-petition debt existed at the time the parties entered into the stipulation. Currently, however, it is uncontested that appellee owes in excess of one million dollars in post-petition Medicare overpayments received during the period since December 11, 1984. Appellee owes an even larger pre-petition debt.

In June, 1985, appellant moved in the United States Bankruptcy Court, pursuant to Rule 60(b), F.R.Civ.P., to modify paragraph 5 of the stipulation, which permitted appellee to retain the balance of the 1984 Volume Adjustment after specified recoupments.

Bankruptcy Judge Abram found unilateral mistake on the part of appellant sufficient to modify the stipulation but no fraudulent or intentional misconduct on the part of the appellee, which she considered essential to warrant vacating the stipulation. Judge Abram granted partial relief on the grounds that appellant knew before entering into the final amendment to the stipulation that the 1984 Volume Adjustment was estimated to be one million dollars, not $450,000. Since appellant had the opportunity but did not alter paragraph 5 after learning of the two-fold increase in the estimated adjustment figures, she concluded that appellee was entitled to the balance of the one million dollars after the recoupments authorized pursuant to the amended stipulation. She left open the issue regarding the disbursement of the remaining Volume Adjustment funds.

*Discussion*

Appellant contends that Judge Abram's interpretation and modification of paragraph 5 failed to consider and, in effect, nullified paragraphs 1 and 6 of the stipulation. The court agrees. Judge Abram

erred as a matter of law in failing to apply generally accepted standards of contract interpretation to the stipulation at issue.

■ A stipulation is a contract between parties. It is subject to the general principals governing the construction of a contract. *Yonkers Fur Dressing Co., Inc. v. Royal Insurance Co.*, 247 N.Y. 435, 446, 160 N.E. 778 (1928); *Nishman v. DeMarco*, 76 App.Div.2d 360, 366, 430 N.Y.S.2d 339, 344 (2d Dep't. 1981), *appeal dismissed*, 53 N.Y.2d 642, 438 N.Y.S.2d 787, 420 N.E.2d 979 (1981).

■ The stipulation should be interpreted within the four corners of the document. *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). The preferred interpretation gives effect to every part of the contract. *Bloor v. Falstaff Brewing Corp.*, 454 F.Supp. 258, 265 (S.D.N.Y.1978) (Brieant, J.), *aff'd*, 601 F.2d 609 (2d Cir.1979); *Weiss v. Weiss*, 52 N.Y.2d 170, 174, 436 N.Y.S.2d 862, 864, 418 N.E.2d 377, 379 (1981). In particular, the purpose of the parties in making the contract must be evaluated, *Schulman Investment Co. v. Olin Corp.*, 477 F.Supp. 623, 628 (S.D.N.Y.1979) (Tenney, J.), and no provision should be construed out of context and in isolation. *Tougher Heating & Plumbing Co., Inc. v. State of New York*, 73 App.Div.2d 732, 733, 423 N.Y.S.2d 289, 291 (3rd Dep't 1979). Furthermore, if a construction can give effect to all provisions of the contract, an alternative construction which neutralizes any provision of that contract should be avoided. *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985).

The Bankruptcy Court's August 6th decision and subsequent orders mandating disbursement of $406,800 in the face of an uncontested, outstanding post-petition debt of at least one million dollars, ignores the Medicare statutory requirements incorporated into the stipulation in paragraph 1 and appellee's agreement to repay post-petition overpayments within thirty days of notification included in paragraph 6.

Judge Abram's modification of paragraph 5, without consideration of the agreement in its entirety and without regard to the purpose of the stipulation, violates the basic tenets of contract interpretation.

In paragraph 1 of the stipulation appellee reaffirmed the provider agreement that incorporates by reference the statutes and regulations governing the Medicare Program. The provider agreement is a mutual obligation. *Blue Cross of Western Pa. v. Monsour Medical Center,* 11 B.R. 1014, 1018, 7 B.C.D. 1141, 1144 (W.D.Pa. 1981). A party that receives benefits under such an agreement must also bear the burdens or obligations that it imposes. *In re Shoppers Paradise, Inc.,* 8 B.R. 271, 7 B.C.D. 69 (Bankr.S.D.N.Y.1980); *In re Yonkers Hamilton Sanitarium, Inc.,* 34 B.R. 385 (S.D.N.Y.1983) (Sand, J.). Furthermore, the government's common law right to recoup Medicare overpayments from funds otherwise due to a provider is codified in the Medicare statute. *Mount Sinai Hospital v. Weinberger,* 517 F.2d 329 (5th Cir.), *modified,* 522 F.2d 179 (5th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); 42 U.S.C. § 1359g.

■ Provisions establishing the procedures for payment and recoupment of overpayments to Medicare providers suggest a dual intent: to assist providers in the early reimbursement of their expenditures while at the same time ensuring that the government recoups overpayments at the earliest time possible. 42 U.S.C. § 1359g; 42 C.F.R. § 405.454 (Payments to providers). Overpayments are an unavoidable side effect of expedited reimbursements and delays in billing and accounting systems. They are not, however, intended to be a government bailout for financially ailing hospitals. The statutory framework provides explicit procedures for recovering such payments.

42 U.S.C. § 1395g directs that:

The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less often than monthly)... with necessary adjustments on account of previously made overpayments.

The Medicare regulations also address the bankrupt or insolvent provider, requiring that:

any payments to [such] provider shall be adjusted by the intermediary, notwithstanding any other regulation or program instruction regarding the timing or manner of such adjustments, to a level necessary to insure that no overpayment to the provider is made.

42 C.F.R. § 405.454(k).

Post-petition overpayments are specifically addressed in paragraph 6 of the stipulation, in which appellee agreed to repay all such overpayments within thirty days of notification. Appellee was notified on June 20 and July 29, 1985, of overpayments in the amounts of $693,100 and $969,100, respectively. These post-petition debts exceed the $406,000 at issue in this appeal.

The court agrees with Judge Abram that the parties could have easily contracted with respect to the precise portion of the 1984 Volume Adjustment to be remitted to appellee. Instead, however, the language agreed to in paragraph 5 is open to interpretation. When the language of a contract is susceptible to more than one interpretation, the court may look to surrounding acts and circumstances. *Record v. Royal Globe Ins. Co.,* 83 App.Div.2d 154, 158, 443 N.Y.S.2d 755, 757 (2d Dep't.1981).

A review of the circumstances surrounding the agreement illustrates the flaw in the Bankruptcy Court's decision. Appellant agreed to the stipulation in an attempt to ease appellee's financial constraints. In the absence of such consideration appellant would have continued to collect $50,000 biweekly from appelle's PIP payments and would have retained the 1984 Volume Adjustment in its entirety. *See* Appendix Vol. 3, 1102, August 6, 1985 hearing. The purpose of the agreement was to reduce the

rate at which appellant was to recoup the Medicare Trust Fund overpayments, not to forgive the overpayments. It is clear that if appellant had known the actual Volume Adjustment, it would not have consented to paragraph 5 of the stipulation.

■ The obligation to repay any post-petition debt within thirty days of notification and the reaffirmation of the provider agreement are as much a part of the bargain as the adjustment of the recoupment rates and the allocation of the balance of the 1984 Volume Adjustment. No logical reading of the stipulation nor consideration of appellee's staggering debt and inability to repay that debt could suggest that the parties bargained for the sum of money that the Bankruptcy Court has ordered appellant to disburse.

Appellant also contends that the Bankruptcy Court's orders require unlawful payments in contravention of federal law. The court need not reach the question of the limits of HCFA's authority, as it is clear that appellee accepted the established procedures for recouping Medicare overpayments and specifically agreed to repay any post-petition overpayments by assenting to paragraphs 1 and 6 of the stipulation.

Construing the stipulation as whole, the court finds that Judge Abram erred in mandating the government to disburse additional Medicare Trust Funds when such funds should have gone toward the liquidation of appellee's post-petition debt. The August 8, 21, and 23 orders are reversed and appellee is entitled to no further payments until it has satisfied the post-petition debt owed to appellant.

IT IS SO ORDERED.