### In re ADVANCED PROFESSIONAL HOME HEALTH CARE, INC., Debtor.

### ADVANCED PROFESSIONAL HOME HEALTH CARE, INC., Plaintiff,

### v.

### BLUE CROSS AND BLUE SHIELD OF MICHIGAN, a Michigan non-profit corporation; Otis R. Bowen, Secretary of the Department of Health and Human Services; C. McClain Haddow, Acting Administrator Health Care Financing Administration, Defendants.

Bankruptcy No. 86–05769–G.
Adv. No. 86–1052.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Jan. 24, 1988.

Robert B. Weiss, Judy B. Calton, of Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for debtor in possession.

Roy C. Hayes, U.S. Atty., Karl Overman, Asst. U.S. Atty., Detroit, Mich., for the Secretary of the Dept. of Health & Human Services.

## AMENDED MEMORANDUM OPINION

RAY REYNOLDS GRAVES,
Bankruptcy Judge.

Advanced Professional Home Health Care, Inc., ("Advanced"), brought this action, Adversary Proceeding No. 86–1052, under 11 U.S.C. § 541, to recover monies withheld from post-petition partial interim payments by Blue Cross and Blue Shield of Michigan ("Blue Cross") and the Department of Health and Human Services. Subsequently, Blue Cross was dismissed as a defendant. The Debtor in Possession also seeks sanctions under 11 U.S.C. 362 (h) for willful violation of the automatic stay provision. In response, the defendant submits that the withholdings were recoupments and, thus, not violations of the automatic stay. Based upon official records, exhibits, briefs of the parties, and oral arguments of counsel at trial, as well as the Court's own research, the Court enters the following findings of fact and conclusions of law.

The facts of the case are as follows. At one time Advanced was the second largest home health provider in Southeastern Michigan. It filed a Chapter 11 petition on November 12, 1986. Counsel for the debtor hand-delivered notice of the bankruptcy filing to Blue Cross, the fiscal intermediary through which payments were made to Advanced on November 13, 1986. Despite notice of the Chapter 11 filing, Blue Cross withheld monies it would have paid to Advanced on November 18, 1986 and indicated that it would continue withholding all monies due to Advanced until overpayments in an undetermined amount had been recovered. On November 19, 1986 Advanced filed a complaint to initiate this adversary proceeding, alleging that at least $213,000 in payments were owing from the Medicare program for the 1986 fiscal year. (Advanced Complaint to Compel Turnover, A.P. No. 86–1052, Docket # 1). The United States has stated, on behalf of the Secre-

tary of the Department of Health and Human Services ("Secretary"), that it "has recouped all of the overpayments and is no longer recouping payments to the debtor." (Trial Brief of United States at page 4). The matter came before the Court for trial on October 16, 1987.

Debtor is a provider of home health services, primarily serving individuals sixty-five years of age and older who qualify for benefits under Part A–Hospital Insurance Benefits for Aged and Disabled of the Medicare Act, Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§ 1395 et seq. Prior to the commencement of this Chapter 11 proceeding Advanced had been reimbursed by Medicare for approximately 90 percent of its services under the terms of a "Provider Agreement," receiving payments through Blue Cross, the private fiscal intermediary designated by the Secretary. Subsequent to filing for protection of the Bankruptcy Code, Advanced did not obtain court approval to assume or reject the Provider Agreement, as may have been required by 11 U.S.C. § 365. (Trial Transcript at —). However, Advanced continued to perform as a "provider," to submit claims to the Secretary, and to receive periodic payments from the Secretary.

Congress imposes upon the Secretary of the Department of Health and Human Services the responsibility for determining the amount owed to providers such as Advanced and for paying them, prior to an audit and on at least a monthly basis, from the Federal Hospital Insurance Trust Fund. Congress also authorizes the Secretary to make "necessary adjustments" to account for prior overpayments or underpayments to providers. 42 U.S.C. 1395g. Any overpayment must be reclaimed from current and future payments to the provider. *In re Yonkers Hamilton Sanitarium Inc.*, 22 B.R. 427, 429 (Bankr.S.D.N.Y.1982). At least one court has described similar financial arrangements under a Medicare Provider Agreement as "current financing" which provides "working capital" with which to run the provider's business. *Matter of Monsour*, 8 B.R. 606, 609 (Bankr.W.

D.Pa.1981), *aff'd*, 11 B.R. 1014 (W.D.Pa. 1981).

The defendant states the policy of 42 U.S.C. § 1395g as being an expression of Congressional recognition "that providers would have difficulty operating for a year without receiving payments" and that "Congress's (sic) solution to this problem was to authorize the Secretary to make estimated interim payments with a year-end accounting to make adjustments for overpayments or underpayments." (Trial Brief of United States at page 2).

Counsel for the Secretary acknowledges that "[t]here is no [factual] dispute that the United States has recouped Medicare funds that were due to the debtor [post-petition] ... The real issue is the legal issue of whether or not this is permissible." (Trial Brief of United States at page 4). Thus, this court must decide three questions. Did the doctrine of recoupment permit the Secretary to withhold funds due the debtor for post-petition services as credit against a pre-petition debt? Further, even if the doctrine did permit the withholding, did the filing of the Chapter 11 petition operate as a stay against the Secretary's withholding procedures under 11 U.S.C. Section 362 (a) of Title 11? Finally, if the automatic stay provision did require a motion and order lifting the stay in favor of the Secretary, does § 362 (h) mandate the imposition of sanctions against the Secretary?

The commencement of a case under the Bankruptcy Code creates an "estate" which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541 (a)(1). The Code includes executory contracts, agreements which obligate both parties to continuing performance, in the newly formed estate. 11 U.S.C. § 365(a). In order to protect the debtor's interest in property of the estate, an injunction arises, by operation of law, at the moment of filing under § 301, 302, or 303 of Title 11. That injunction applies "to all entities", including governmental units, and prohibits:

§ 362 (a)(1)

(1) the commencement or continuation, including the issuance or employment of

process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

11 U.S.C. § 362 (a)

■ Thus, the Code plainly states that the automatic stay prohibits ALL actions to recover prepetition claims, 11 U.S.C. § 362 (a) (1). A "claim" is defined as a "right to payment" in § 101 (4) (A). Also, to the extent a claim "arises before the order for relief in a bankruptcy proceeding," the holder of that claim is a "creditor" in the proceeding under Sec. 101 (9), and eligible to file a proof of claim under § 501. Clearly, the automatic stay provision applies to governmental units such as the Department of Health and Human Services, 11 U.S.C. § 101 (14), unless excused from the restraints of the injunction by § 362 (b).

Further, the Code prohibits any act to obtain possession or to exercise control over property belonging to the estate. 11 U.S.C. § 362 (a)(3). Monies representing payment for services rendered by a Chapter 11 debtor clearly fall into this category. Furthermore, the Code prohibits "any act" to collect, assess, or otherwise "recover" a claim against a debtor that arose before the commencement of the bankruptcy case. 11 U.S.C. § 362 (a)(6).

Any act setting off a debt owed to the debtor which arose before the filing of the petition against a claim against the debtor arising pre-petition is also prohibited by the automatic stay. Thus, absent court authorization, even set-off procedures permitted by 11 U.S.C. § 553 are forbidden after the filing of the chapter 11 petition. 11 U.S.C. § 362(a)(7).

The automatic stay has several statutory exceptions, all of which Congress listed in § 362 (b) of Title 11. At trial counsel for the Secretary contended that the recoupment procedure constituted the "commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power" and therefore was not prohibited by the injunction. This court finds that Congress did not intend § 362 (b)(4) to apply to a governmental action such as that of the Secretary's withholding funds from Advanced's weekly interim payments. As Senator DeConcini stated,

"This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the *public health and safety* and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." (emphasis added).

124 Cong.Rec. S17409 (daily ed. Oct. 6, 1978).

This court finds no mention of the recoupment doctrine in the Bankruptcy Code or its legislative history. Some construe this to mean that Congress intended to allow the holder of a claim which the holder can plausibly claim as one of recoupment to proceed, without court authorization, to collect, assess and retain funds otherwise due a debtor. This court does not adopt that line of reasoning. Rather, it sees a clear mandate from the Congress that only specifically stated acts may be undertaken against the debtor or against property of the estate without risk of violation of the automatic stay. Further, the court is mindful that Congress provided a procedure for a party in interest to obtain relief from the stay "for cause." 11 U.S.C. § 362 (d). A creditor who employs self help procedures instead of court authorization does so at his

own risk. *In re Miller,* 22 B.R. 479 (D.C.D. Md.1982).

The Secretary contends that judicial decisions have created exceptions to the automatic stay and permit the Secretary to continue withholding procedures despite knowledge of the bankruptcy proceeding. Counsel for the Secretary directs this court's attention to cases which have permitted withholdings of certain amounts from post-petition funds scheduled for disbursement to a health care provider as a credit against overpayments which the Secretary made to that provider before the commencement of the case under Title 11 of the Bankruptcy Code. *In re Yonkers Hamilton Sanitarium Inc.,* 22 B.R. 427, 433–434 (Bankr.S.D.N.Y.1982), *aff'd,* 34 B.R. 385, 386 (S.D.N.Y.1983); *In re Berger,* 16 B.R. 236 (Bankr.S.D.Fla.1981); *In re Neuman,* 55 B.R. 702, 706 (S.D.N.Y.1985).

The Secretary relies on these cases as support for the proposition that recoupment does not violate the automatic stay. In the *Yonkers Hamilton* case, Judge Schwartzberg held that the Provider Agreement was binding on the parties despite the filing of the bankruptcy petition, despite debtor's apparent failure to assume the contract under § 365 (a), and despite the Secretary's failure to require the debtor to assume or reject the agreement under § 365 (d)(2). 22 B.R. at 435. The *Yonkers Hamilton* court accepted the government's argument that accepting payments from the Medicare program obligated the debtor to accept the post-petition withholding procedures despite the intervention of bankruptcy. 22 B.R. at 434. On appeal, Judge Schwartzberg was affirmed. The district court based its decision upon "principles of equity." *In re Yonkers Hamilton Sanitarium Inc.,* 34 B.R. 385, 388 (S.D.N.Y. 1983). It found it significant that, in addition to the Provider Agreement, the parties had made a separate contract in which the provider agreed, prior to filing the Chapter 11 petition, to continuance of the withholding procedure described as "recoupment." 34 B.R. at 388.

The *Yonkers Hamilton* court assumed that the Provider Agreement was an executory contract the renewal of which was subject to curing of any "default." 22 B.R. at 434. However, the court held the debtor to the terms of the pre-petition contract despite the provider's failure to assume the contract. The bankruptcy judge reasoned that the trustee could not take the benefits of the contract with the Secretary and prevent, under the protection of the automatic stay, the reductions as set forth in the same contract. 22 B.R. at 435. This court finds that the Bankruptcy Code authorizes the trustee to do just that and requires a creditor who finds the automatic stay unduly restrictive or inapplicable to seek relief from the injunction under § 362 (d).

Executory contracts come into the Chapter 11 estate under §§ 541 (a) and 365 (a) of Title 11. Congress permits the trustee or debtor in possession to make a business judgment concerning the value of certain executory contracts to the estate. The trustee may, subject to court approval, assume or reject "any" executory contract. Presumably Congress intended to allow the trustee to reject those contracts considered detrimental and assume those deemed beneficial, providing the bankruptcy court approves. Furthermore, the Chapter 11 trustee, in many circumstances which do not involve non-residential real property, may make the business judgment "at any time" before the confirmation of a plan unless a party to the contract obtains a court order requiring the trustee to assume or reject within a specified period of time. 11 U.S.C. § 365 (d)(2).

A close examination of § 365 makes it impossible for this court to base its decision on equitable principles. The bankruptcy judge in *Yonkers Hamilton* decided that the debtor should not be able to have the benefits of a continuing relationship with the Secretary without the burdens. However, the Code permits the debtor to reject a contract after having had the benefits of a contract for a considerable period of time. In addition, under the Code, the trustee's decision to reject an executory contract has certain and predictable consequences; rejection is tantamount to a breach of the contract at a time set forth by the Code. 11 U.S.C. § 365 (g). According to legisla-

tive history, "[t]he purpose is to treat rejection claim (sic) as pre-petition claims." HR Rep. No. 95–595, 95th Cong., 1st Sess. 349 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6305; S.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978) U.S.Code Cong. & Admin.News pp. 5787, 5846. To deny the clear language of the provision requiring conscious decisions by the trustee, and scrutiny of those decisions by the bankruptcy court, in favor of an equitable doctrine which is not mentioned in the Code is not possible for this court. Thus, we must decline to adopt the holding of *Yonkers Hamilton.*

In another case relied upon by the Secretary, a Chapter 13 debtor challenged the continuation of Medicare withholding procedures following the intervention of bankruptcy in *In re Berger,* 16 B.R. 236, 237 (Bankr.S.D.Fla.1981). In *Berger* the government "voluntarily suspended withholding any sums pending determination of the pending dispute regarding its claim." 16 B.R. at 237. The court reasoned, in *dicta,* that because the debtor, with advice of counsel, had made a separate agreement acquiescing to withholding from future monthly payments just six months before filing his chapter 13 petition, the withholding did not violate the automatic stay under § 362 (a) (7). 16 B.R. at 237. On the facts presented in *Berger,* this court does not consider the *Berger* case dispositive or controlling.

The Secretary relies on a third case in which the Secretary had made pre-petition Medicare overpayments to a provider resulting in a claim of $6,796,377 against the Chapter 11 estate. Prior to the commencement of the case, the government had begun to withhold funds from the provider's "future PIP payments." *In re Neuman,* 55 B.R. 702, 704 (S.D.N.Y.1985). The government signed a post-petition stipulation agreeing to reduce the rate of withholding shortly after the provider filed its voluntary Chapter 11 petition. The debtor agreed, in this post-petition agreement, to repay any post-petition debt within thirty days of notification. The district court reversed the bankruptcy judge who granted the provider's motion to modify the post-pe-

tition agreement in the provider's favor. 55 B.R. at 705. This court can find no reference to any claimed violation of the automatic stay in *Neuman.*

■ After consideration of the relevant provisions of the Code and the cases cited by counsel for the Secretary, this court finds that, to the extent it is determined that the Secretary of the Department of Health and Human Services withheld amounts from the payments scheduled for disbursement to Advanced subsequent to the commencement of this case as credit against any claim which arose prior to the filing without relief from the automatic stay, the Secretary was in violation of § 362(a)(1), (3), (6), or (7). This does not, however, preclude the possibility that § 553 may ultimately allow offsets.

The Secretary argues that his actions, characterized as recoupments, are unaffected by the Bankruptcy Code. Recoupment has been defined as "the right of a defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law imposes on him in the making or performance of that contract." 20 Am. Jur.2d *Counterclaim, Recoupment, and Setoff,* § 1 (1965). Procedurally, recoupment is a defensive measure and not an independent cause of action. It has also been said that recoupment differs from a counterclaim or setoff in that it may result only in a reduction of a claim and not in an affirmative judgment for any excess over that claim. 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff,* § 12 (1965). This court finds it important that the defendant's right of recovery must arise from the *same contract.* T.W. Waterman, *A Treatise on the Law of Set-off, Recoupment and the Counterclaim* § 466 at 482–83 (2d ed. 1872).

Finally, the term "recoup" is often used as a synonym for "reduction." 20 Am. Jur.2d *Counterclaim, Recoupment, and Setoff,* § 12 (1965). The latter definition seems most appropriate for describing the

procedure used under the Medicare Act to "adjust" the accounts of the Secretary and the providers he reimburses. 42 U.S.C. 1395g.

The Secretary's reliance on the doctrine of recoupment is misplaced. For example, the recoupment doctrine is codified in the Uniform Commercial Code. M.C.L.A. 440.-2717. The paradigm of recoupment occurs in a sale of goods situation in which a buyer may notify a seller that he intends to deduct damages resulting from a breach of contract from the price still due on the same contract. If the seller brings suit on the same contract, the buyer may plead the affirmative defense of recoupment.

This is not the same as the Medicare bookkeeping system. It appears that the Secretary employs a system similar to account stated. The Secretary advances sums of money to approved providers who in turn submit claims for services. Periodically, after audits of the accounts, the Secretary determines whether he owes the provider or the provider has been overpaid. The provider is notified of the state of his account following the audit. Then, amounts determined owing to the Secretary are withheld from current and future interim payments scheduled for the provider. Instead of requiring the provider to settle the account immediately, the Secretary, under the program set forth in the Medicare Act, becomes the creditor of the provider until the account is settled. The Secretary's cause of action accrues with the making of a "final determination which sets the exact amount of overpayment" due from the provider. *United States v. Gravette Manor Homes*, 642 F.2d 231 (8th Cir. 1981).

The intervention of bankruptcy has disrupted the system of accounting in several cases involving health care providers including the cases cited by counsel for the Secretary. Courts have applied the recoupment doctrine to allow the Secretary to continue withholding amounts owing due to pre-petition overpayments from current and future interim payments to providers that have become Chapter 11 debtors. *In re Monsour Medical Center*, 8 B.R. 606 (Bankr.W.D.Pa.1981), *aff'd*, 11 B.R. 1104 (W.D.Pa.1981). *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427 (Bankr.S.D. N.Y.1982).

■ In the case at bar, the Debtor in Possession has delayed and resisted making the decision whether to assume or reject the Provider Agreement. At trial, counsel for the Secretary stated that the debtor had not officially accepted or rejected the agreement. The plaintiff stated unequivocally that it had not assumed its Provider Agreement with the Medicare Program. (Plaintiff's Trial Brief at page 9). The essence of plaintiff's argument has been that, in the cases decided on the basis of recoupment, courts have given serious weight to the decision of the provider to assume the Provider Agreement, its burdens as well as its benefits. Contrary to the apparent reasoning of both plaintiff and defendant, this court determines that the provider does not have the opportunity to assume the Provider Agreement nor does the bankruptcy judge have the authority to approve any assumption of a pre-existing Provider Agreement.

Section 365 (c)(2) is the provision which controls the disposition of the case. Congress has deliberately limited the trustee's opportunity to decide whether to assume or reject certain executory contracts. The trustee may not assume a contract to make a loan, extend debt financing or other "financial accommodations to or for the benefit of the debtor." 11 U.S.C. § 365(c)(2). The trustee, under § 541 (a) takes the debtor's "interest," whatever it is, in the contract. When the contract is a Provider Agreement, the trustee may take as an "interest" only the debtor's interest in its past business relationship with the Secretary.

A creditor does not have complete freedom to terminate or modify his relationship with the new "debtor." Although a certain type of contract may be excepted from the debtor's right to assume, a party to such a contract seeking to determine his rights prior to a statement by the debtor must follow the procedures as prescribed by § 365 or § 362 (d) to obtain such relief. *In*

*re Adana Mortgage Bankers, Inc.*, 12 B.R. 989, 1004 (Bankr.N.D.Ga.1980).

The debtor in possession cannot assume that the other party to the pre-petition contract will agree to continue to perform. Unfortunately, the Code does not guide the trustee. Whether the trustee must formally reject the contract is not stated. We conclude that the debtor in possession must at least renegotiate and obtain a new agreement with the creditor. It follows that any liability of the debtor becomes a pre-petition claim under §§ 502 (g) and 365(g). The rights and liabilities emanating from a post-petition relationship must be considered as separate and distinct from those in the prepetition contractual relationship. The Secretary may assert a right to recover based on a pre-petition contractual agreement, and he may also assert rights arising from similar subject matter and a similar post-petition business relationship with the provider. Nevertheless, the rights do not arise from the same contract. Thus, the recoupment doctrine is not appropriately used to evaluate this case.

The term "financial accommodation" as used in § 365 is not defined by the Bankruptcy Code. *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977, 986 (Bankr.N.D.Ga.1980). A creditor may petition the bankruptcy court to determine whether its arrangement with a debtor is of the type described in § 365 (c) (2). Or, at risk of violating the automatic stay, a creditor may proceed under § 365 (e) (1) and (e) (2) to terminate or modify the agreement it has with a debtor.

This court has determined that the Provider Agreement between the Secretary and Advanced is an executory contract which provides for the extension of financial accommodations to Advanced and that Section 365 (c)(2) prohibits Advanced from assuming the prepetition contract. The Congress, knowing that the provider could not settle its account immediately on receiving notice of overpayment during a given fiscal year, set up a system for withholding specified amounts from current and future interim payments to the provider. Counsel for the Secretary and several courts have observed that providers need the advances on an interim basis as working capital and that providers could not operate without them. Indeed, when the providers are not able to repay according to schedule, interest is charged on the amount past due. (See transcript).

■ The Debtor in Possession may have entered into a post-petition business relationship with the Secretary. A trustee, or debtor in possession, may obtain unsecured credit and incur unsecured debt in the ordinary course of business as needed to "preserve the estate" under § 503 (b) (1). 11 U.S.C. § 364(a). The Code does not require the debtor to obtain court approval to negotiate contracts which provide for unsecured credit or financial accommodations to the Chapter 11 estate. However, the Secretary must close the provider's existing account and open a new account for post-petition activities. This court emphasizes that any post-petition arrangement is separate and distinct from the pre-petition contract which is deemed "rejected" or abrogated immediately upon the commencement of the case. 11 U.S.C. 365 (g) and 502 (g). Clearly, any liability under the pre-petition contract would be a pre-petition claim, and liability under the post-petition arrangement would be considered as an administrative expense. 11 U.S.C. § 503(b)(1).

■ The last issue the court must consider is the "willfullness" of the secretary's actions in his violations of the automatic stay. Under the Bankruptcy Code, a debtor may recover "actual damages, including costs, attorneys' fees, and punitive damages for a willful violation of the automatic stay." 11 U.S.C. 362 (h). We agree with the courts that have held "willful" to mean either deliberate or intentional. *In re Rinehart*, 76 B.R. 746, 756 (Bankr.D.S.D. 1987). In the case at bar, the Secretary, through its fiscal intermediary, had actual knowledge in the form of a hand-delivered letter from counsel of Advanced of the automatic stay and its effect. While this court does not find the Secretary in civil contempt, it does find the Secretary to have knowingly and purposefully continued its

withholding procedures after the filing of the Chapter 11 petition. The circumstances warrant an award of actual attorneys' fees, costs, and expenses incurred by Advanced in bringing and prosecuting this adversary proceeding.

This court will set a hearing to determine the amount to be turned over to the Debtor in Possession as property of the estate and as sanctions under § 362(h).